[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 22.]

GALMISH, APPELLANT, ET AL., *v*. CICCHINI, APPELLEE, ET AL.

[Cite as *Galmish v. Cicchini*, 2000-Ohio-7.]

*Contracts—Application of parol evidence rule to contract containing integration clause and involving sale of property consisting of land and an office building—Claims of fraudulent inducement, promissory fraud, breach of contract, and lack of good-faith performance—Judgments of trial court on issues of prejudgment interest and attorney fees upheld, when.*

(No. 99-1337—Submitted April 25, 2000—Decided September 20, 2000.)

APPEAL from the Court of Appeals for Stark County, Nos. 97CA00326 and 97CA00403.

——————————

{¶ 1} On May 26, 1995, plaintiff-appellant, Mary Ann Galmish, filed a complaint in the Stark County Court of Common Pleas against her former husband, defendant-appellee, Guy Cicchini, claiming breach of contract, breach of the contractual duty of good faith and fair dealing, and fraud. The complaint centers on the terms of a written agreement that the parties executed on May 27, 1994, for the sale of property consisting of land and an office building located at 5560 Dressler Road in Jackson Township, Stark County ("the property"). Under the terms of the agreement, Cicchini agreed to purchase the property for $765,000 and to pay Galmish one-half of all net proceeds in excess of $765,000 "if said property is sold, transferred or conveyed to Developers Diversified [Realty Corporation] ["Developers"] or its agents, representatives, or assigns within one (1) year of the execution of this Agreement." The gravamen of the complaint is that Cicchini intended from the outset to deprive Galmish of her share of the excess proceeds by delaying completion of the sale of the property to Developers beyond May 27, 1995.

**{¶ 2}** The cause proceeded to trial by jury on August 18, 1997. Because this appeal involves the propriety of Cicchini's motions for directed verdict, the evidence submitted at trial will be construed most strongly in favor of Galmish. Civ.R. 50(A)(4).

**{¶ 3}** Galmish and Cicchini were divorced after twenty-five years of marriage. Galmish acquired the property pursuant to the terms of their 1991 divorce settlement. On September 20, 1993, Galmish agreed to give Developers a two-month option to purchase the property for $765,000. Developers' interest in the property was contingent upon its ability to acquire adjacent parcels in order to develop a shopping center. However, its efforts in this regard were hampered because one of the properties needed for the shopping center, the Parke Hotel, was involved in bankruptcy proceedings.

**{¶ 4}** On November 15, 1993, Galmish and Developers amended their agreement to provide for an extension of the closing date in one-month intervals, not to extend beyond March 15, 1994, at a cost to Developers of $6,000 per month. Developers then prepared a second amendment for another sixty-day extension, which Galmish signed and returned to Developers.

**{¶ 5}** Thereafter, the following four events took place, although the record is unclear as to the order in which they occurred. First, Developers contacted Cicchini, explained the situation to him, and asked for his help in ensuring that the property would be available when the Parke Hotel bankruptcy was finally resolved. Cicchini told Developers not to worry, that he either had purchased or was going to purchase the property from Galmish, and that he would sell it to Developers when the time came. Second, Developers notified Galmish that it was not going to sign the second amendment to their agreement and that Galmish was free to otherwise sell or lease the property.

**{¶ 6}** Third, Cicchini told Galmish that if she sold the property to him, he "can and will" sell the property to Developers for $1,700,000. Thereupon, the

2

parties agreed that Cicchini would purchase the property for $765,000 and give Galmish fifty percent of any amount he receives from Developers over $765,000. Fourth, after a written agreement was drafted to this effect, Cicchini insisted that the language be changed so that Galmish's right to share in any excess proceeds would be limited to one year. This temporal limitation, which was drafted by Galmish's attorney, was then incorporated along with an integration clause into the written agreement that both signed on May 27, 1994. Galmish transferred title to Cicchini on May 31, 1994.

{¶ 7} In the late summer of 1994, Developers began to negotiate with Cicchini for the sale of the property. By December, the matter of the Parke Hotel bankruptcy was close to resolution and Developers was anxious to close the deal. Developers made several increasing offers to purchase the property, each time being assured that an agreement was imminent, but Cicchini would not sign the proposed written purchase agreements. Instead, Cicchini repeatedly delayed the closing date for various reasons, so much so that Developers' general counsel testified that she had never seen anything like it in her twenty years of experience.

{¶ 8} On January 27, 1995, Developers submitted a written purchase agreement to Cicchini for $1,480,000 with a closing date of April 15, 1995. However, Cicchini insisted that closing take place no earlier than June, and Developers revised the purchase agreement to provide for a closing date of June 1, 1995. At this time, Galmish became concerned that Cicchini was attempting to defeat her rights under their agreement to share in the proceeds in excess of $765,000 by stalling closing with Developers beyond the May 27, 1995 deadline. Accordingly, on February 1, 1995, Galmish filed an affidavit with the Stark County Recorder placing any purchaser of the property on notice of her agreement with Cicchini.

{¶ 9} On February 17, 1995, the purchase agreement between Developers and Cicchini was again revised at Cicchini's request. It begins with the language

"This Purchase Agreement is entered to be effective on June 2, 1995," and contains two unusual provisions for escrow and confidentiality. First, it provides that "Seller shall deposit the Deed and the owner's affidavit * * * in escrow simultaneously with the execution of this Agreement, provided, however, that * * * on the Closing Date [June 2, 1995], Seller may substitute with the Title Company a Deed * * * dated as of the Closing Date." Second, the agreement provides that "[w]ithout the prior written consent of the other party, neither Seller nor Buyer will disclose to any person, other than their legal counsel and proposed lender, either the fact that this Agreement has been entered into or any of the terms, conditions or other facts with respect thereto, including the status thereof." By virtue of these provisions, Cicchini could execute the agreement and transfer the property to Developers before May 27, 1995, make it appear as though these transactions occurred on June 2, 1995, and prevent these facts from being disclosed to Galmish.

{¶ 10} The last unsigned revision, delivered to Cicchini's counsel on March 24, 1995, removed the above escrow provision and provided for a closing date of June 19, 1995. During these revisions, representatives of Developers pressed Cicchini and his attorney for an explanation of the interminable delays and were told that Cicchini would not sign the agreement or permit closing before May 27, 1995, so that Galmish would be unable to share in the proceeds.

{¶ 11} Sometime between June 12 and June 14, 1995, Cicchini informed Developers that he would not agree to sell the property for $1,480,000. However, for the first time in their negotiations, Cicchini specified a selling price, and an agreement was reached under which Developers would purchase the property for $1,750,000, virtually the same price that Cicchini told Galmish he "can and will" sell it for. On June 15, 1995, Galmish took Cicchini's deposition, during which Cicchini stated various reasons for not being able to close prior to May 27, 1995. However, Cicchini refused to answer questions posed by Galmish's counsel

4

regarding his negotiations with Developers subsequent to June 1, 1995. The next day, Cicchini sold the property to Developers for $1,750,000.

{¶ 12} Based on this evidence, the jury rendered a verdict in favor of Galmish and awarded her $492,000 in compensatory damages, $1,000,000 in punitive damages, and attorney fees. The trial court entered judgment upon the verdict and, in subsequent rulings, awarded Galmish prejudgment interest on the compensatory damages award from June 16, 1995, to the date of judgment, and attorney fees equal to one-third of the total award.

{¶ 13} On appeal, Cicchini asserted six assignments of error.[1] The court of appeals addressed only the first assignment of error, holding that the trial court should have directed a verdict in favor of Cicchini on Galmish's claims. In so holding, the court of appeals construed Galmish's fraud claim as a "conten[tion] that Mr. Cicchini misrepresented to her that the contract would allow her to recover fifty percent of the amount that he receives over $765,000 from [Developers] without any indication that such a provision would last for only a one-year period." The court found that "parol evidence should not have been allowed to be used for

---

1. The six assignments of error asserted by Cicchini in the court of appeals are as follows:

"I. Assignment of Error No. 1: The trial court erroneously denied the defendant's motions for a directed verdict at the close of the plaintiff's case and at the close of all the evidence.

"II. Assignment of Error No. 2: The trial court erroneously admitted and erroneously instructed the jury to consider extrinsic parol evidence that contradicts unambiguous terms of integrated written contracts for the sale of real property.

"III. Assignment of Error No. 3: The trial court erroneously instructed the jury regarding the plaintiff's contract, good faith, and fraud claims.

"IV. Assignment of Error No. 4: The trial court erroneously overruled the defendant's objection to a jury instruction regarding the plaintiff's claim for punitive damages, and erroneously submitted that claim for the jury's consideration.

"V. Assignment of Error No. 5: The trial court erroneously added prejudgment interest to the plaintiff's contract judgment when (a) the plaintiff did not seek interest on the contract in her complaint or at the trial, (b) the plaintiff ultimately sought prejudgment interest for her tort claim rather than her contract claim, and (c) the court failed to conduct the mandatory evidentiary hearing for prejudgment interest on a tort claim.

"VI. Assignment of Error No. 6: The trial court erroneously awarded attorney fees when (a) the plaintiff had no legal basis to recover fees, and (b) the trial court received inadequate evidence to support its finding that the claimed fees are reasonable."

demonstrating reliance upon representations regarding the time-frame of a provision of the contract because the contract contains an integration clause that attests to the parties' not relying on such information."

{¶ 14} With regard to Galmish's claims for breach of contract and breach of duty of good faith, the court of appeals appears to have construed these claims as an assertion that Cicchini was contractually bound to sell the property within one year, and found that "[t]he contract does not create an implied duty upon Mr. Cicchini to employ reasonable efforts to sell the property." After finding Cicchini's first assignment of error dispositive, the court of appeals declined to consider the remaining assignments of error on the basis that they are moot, reversed the judgment of the trial court, and remanded the cause to the trial court for further proceedings.

{¶ 15} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*A. William Zavarello Co., L.P.A., A. William Zavarello* and *Rhonda Gail Davis*; *Day, Ketterer, Raley, Wright & Rybolt, Ltd.,* and *Todd A. Harpst*, for appellant.

*Porter, Wright, Morris & Arthur, L.L.P., Ralph Streza, Natalie Peterson* and *James E. Pohlman*, for appellee.

*Ray & Alton, L.L.P.,* and *Frank A. Ray*, urging reversal for *amicus curiae, Ohio Academy of Trial Lawyers.*

_____

**ALICE ROBIE RESNICK, J.**

I

Parol Evidence Rule

**{¶ 16}** The pivotal issue in this appeal is whether Galmish's claims are barred by the parol evidence rule.

**{¶ 17}** The parol evidence rule states that "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." 11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4. Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction. *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 324, 49 O.O. 174, 179, 109 N.E.2d 265, 270. "The parol evidence rule is a rule of substantive law which, when applicable, defines the limits of a contract." *Id.*, paragraph one of the syllabus.

**{¶ 18}** As summarized by the Supreme Court of California in *In re Gaines' Estate* (1940), 15 Cal.2d 255, 264-265, 100 P.2d 1055, 1060:

"The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is

sometimes said, the written memorial supersedes these prior or contemporaneous negotiations."

{¶ 19} The principal purpose of the parol evidence rule is to protect the integrity of written contracts. *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, 1080. By prohibiting evidence of parol agreements, the rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments. "It reflects and implements the legal preference, if not the talismanic legal primacy, historically given to writings. It effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superseded by the written document." (Footnotes omitted.) 11 Williston on Contracts, *supra*, at 541-548, Section 33:1.

{¶ 20} Nevertheless, the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement. *Drew v. Christopher Constr. Co., Inc.* (1942), 140 Ohio St. 1, 23 O.O. 185, 41 N.E.2d 1018, paragraph two of the syllabus. See, also, *Union Mut. Ins. Co. of Maine v. Wilkinson* (1871), 80 U.S. (13 Wall.) 222, 231-232, 20 L.Ed. 617, 622. As explained in Annotation, Parol-Evidence Rule; Right to Show Fraud in Inducement or Execution of Written Contract (1928), 56 A.L.R. 13, 34-36:

"The principle which prohibits the application of the parol-evidence rule in cases of fraud inducing the execution of a written contract * * * has been regarded as being as important and as resting on as sound a policy as the parol-evidence rule itself. It has been said that if the courts were to hold, in an action on a written contract, that parol evidence should not be received as to false representations of fact made by the plaintiff, which induced the defendant to execute the contract, they would in effect hold that the maxim that fraud vitiates every transaction is no longer the rule; and such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing.

"Fraud cannot be merged; hence the doctrine, which is merely only another form of expression of the parol-evidence rule, that prior negotiations and conversations leading up to the formation of a written contract are merged therein, is not applicable to preclude the admission of parol or extrinsic evidence to prove that a written contract was induced by fraud." (Footnotes omitted.)

{¶ 21} Stated differently, "[i]t was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement which was obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his deception or chicanery." (Footnotes omitted.) 37 American Jurisprudence 2d (1968) 621-622, Fraud and Deceit, Section 451.

{¶ 22} Contrary to Cicchini's assertions, this principle does not lose its force merely because the considered written agreement contains an integration clause. The parol evidence rule applies, in the first instance, only to integrated writings, and an express stipulation to that effect adds nothing to the legal effect of the instrument. The presence of an integration clause makes the final written agreement no more integrated than does the act of embodying the complete terms into the writing. Thus, the presence of an integration provision does not vitiate the principle that parol evidence is admissible to prove fraud. See *Blackledge v. Allison* (1977), 431 U.S. 63, 75, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136, 148, fn. 6; *Downs v. Wallace* (Ala.1993), 622 So.2d 337, 341; Annotation, *supra*, 56 A.L.R. at 56-62; 37 American Jurisprudence 2d, *supra*, at 622-623, Section 452; 11 Williston on Contracts, *supra*, at 661-673, Section 33:21.

{¶ 23} However, the parol evidence rule may not be avoided "by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing

which pertains to exactly the same subject matter, yet has different terms." *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph three of the syllabus. See, also, *Ed Schory & Sons, Inc., supra*, 75 Ohio St.3d at 440, 662 N.E.2d at 1080.[2] In other words, "[t]he Parol Evidence Rule will not exclude evidence of fraud which induced the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to prove such contradictory assertions is exactly what the Parol Evidence Rule was designed to prohibit." Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L.Rev. 1, 7.

{¶ 24} The same concept—that the proffered evidence of fraud must show more than a mere variation between the terms of the written and parol agreement—applies to allegations of promissory fraud, which is the type of fraud that Galmish claims induced her to enter into the contract with Cicchini. Thus, "[t]he rule excluding parol evidence of collateral promises to vary a written contract does not

2. The analysis and holding in *Cochran*, at paragraphs three and four of the syllabus, proceeds from the premise that the court was dealing with a Statute of Frauds case. However, as convincingly demonstrated by Professor Shanker, "a careful consideration of the facts of the case show[s] that the Statute of Frauds was never a serious issue, since all agreed that the party to be charged had signed the writing containing the terms of the suretyship and mortgage agreement. The same careful analysis shows that the question actually presented was whether that written agreement could be contradicted under the plaintiff's theory of fraudulent inducement. This is a question to be determined by the Parol Evidence Rule; and, on this score, the Ohio Supreme Court, without realizing it, wrote a significant and useful essay." Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L.Rev. 1, 18. The court seems to have noticed the mistake when, in *Ed Schory & Sons, Inc.*, *supra*, 75 Ohio St.3d at 440, 662 N.E.2d at 1080, it applied *Cochran* to determine that a negligent misrepresentation claim, which merely alleged that a prior statement or agreement is different from that which is contained in the written contract, does not suffice to overcome the *parol evidence rule*. For these reasons, we have incorporated Cicchini's arguments regarding the Statute of Frauds into our consideration of the applicability of the parol evidence rule. The present case, like *Cochran*, involves a writing signed by both contracting parties, and the issue is whether that writing is being contradicted under Galmish's theory of fraudulent inducement.

apply where such contract is induced by promises fraudulently made, with no intention of keeping them * * *." 37 American Jurisprudence 2d, *supra*, at 623, Section 452. However, the parol evidence rule does apply "to such promissory fraud if the evidence in question is offered to show a promise which contradicts an integrated written agreement. Unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible." *Alling v. Universal Mfg. Corp.* (1992), 5 Cal.App.4th 1412, 1436, 7 Cal.Rptr.2d 718, 734. By the same token, "if the written contract provides for the doing of an act on a certain condition, the promisee cannot show that the promise was an absolute one merely by claiming fraud, unless he produces some other evidence of the alleged fraud." Annotation, *supra*, 56 A.L.R. at 47-48.

{¶ 25} In the present case, the court of appeals construed Galmish's fraudulent inducement claim as being premised on the theory that Cicchini made a collateral promise to split the excess proceeds without indicating a time limit. According to Cicchini, Galmish "hopes to impose * * * an unwritten promise he allegedly made prior to the execution of the [written] contract that he would sell the [property] to [Developers] for $1.7 million." The court of appeals characterized Galmish's breach-of-contract/good-faith claim as being based on an allegation that Cicchini made an absolute promise to sell or attempt to sell the property to Developers within one year. Under this construction of Galmish's claims, none of the extrinsic evidence presented by Galmish at trial should have been admitted because it does nothing more than establish parol promises that contradict or vary the unambiguous terms of the written contract.

{¶ 26} However, these characterizations are not at all an accurate representation of Galmish's claims. Galmish's breach-of-contract/good-faith claim alleges that Cicchini sought escape from his own promise to share the excess proceeds by intentionally and unjustifiably preventing the happening of the condition on which it was based. See 8 Corbin on Contracts (Rev.Ed.1999) 580-

586, Section 40.17. The essence of Galmish's fraudulent inducement claim is that Cicchini harbored this intent at the time he executed the written contract and, therefore, made a promise with intent not to perform. See 37 American Jurisprudence 2d, *supra*, at 104-109, Sections 68 and 69; 5 American Jurisprudence POF 2d (1975) 727, Promise Made With Intent Not to Perform.

{¶ 27} These claims do not seek to contradict or vary the terms of the written agreement. In fact, they do not rest on any prior agreements or promises at all. They do not seek to establish that Cicchini promised or agreed, collaterally or otherwise, to split the excess proceeds after a year had elapsed, or that he would sell or attempt to sell the property within one year, to Developers, or for $1.7 million, or even that he would make any effort to sell the property at all. To the contrary, Galmish's claims fully admit, and indeed rely upon, the fact that Cicchini's promise to split the excess proceeds is, as stated in the written agreement, entirely conditional upon the sale of the property to Developers within one year. While some of the evidence presented by Galmish involves statements made by Cicchini prior to the execution of the writing, *e.g.*, that he "can and will" sell the property to developers for $1.7 million, these statements were not proffered for the purpose of proving a parol agreement. Instead, they were offered as part of the surrounding circumstances leading up to the finalized written agreement to show that Cicchini intended from the outset to prevent the fulfillment of the condition that would invoke his contractual promise to share the excess proceeds. Quite simply, Galmish does not rely on a parol promise to fulfill the condition precedent to Cicchini's liability, but on the promise implied in the writing that Cicchini would not connive to prevent it.

{¶ 28} Accordingly, the trial court correctly denied Cicchini's motions for a directed verdict based on the parol evidence rule.

{¶ 29} Cicchini points out, however, that the court of appeals chose not to address his remaining assignments of error, "including those concerned with the

propriety of punitive damages, prejudgment interest and attorneys' fees," and argues that "[i]f this Court disturbs the appellate court ruling, it should surely remand the case for further proceedings on these unaddressed issues." We disagree. Assignments of Error Nos. One, Two, and Three have all been resolved by this opinion, as they all concern the applicability of the parol evidence rule to bar Galmish's claims. Assignments of Error Nos. Four, Five, and Six can be resolved presently without any further delay.

II

Punitive Damages

{¶ 30} In his brief to the court of appeals, Cicchini raises four arguments in support of his fourth assignment of error. See fn. 1. His first two arguments are (1) Galmish "had no case for punitive damages when she had no case for compensatory damages," and (2) "a breach of contract never supports an award of punitive damages." These arguments fail because our determination that the parol evidence rule is inapplicable necessarily upholds the award of compensatory damages on Galmish's fraud claim.

{¶ 31} Cicchini's third argument is that there is no evidence in the record to support a finding that either his fraud was aggravated or his wrongdoing particularly gross or egregious. See *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph three of the syllabus. This argument fails because, as the facts set forth above illustrate, the record is replete with evidence showing a continuous course of malicious and egregious conduct by Cicchini in devising, implementing, and concealing his scheme to injure Galmish by delaying the sale of the property to Developers.

{¶ 32} Cicchini's fourth argument is that the trial court's instruction on punitive damages erroneously permitted the jury to award punitive damages for fraud in the absence of aggravation or egregious wrongdoing and allowed that

award to be based on a preponderance of the evidence rather than on clear and convincing evidence. However, Cicchini did not raise these objections in the trial court. Instead, Cicchini's sole objection to the trial court's punitive damages instruction was made in the context of a general objection to any instruction on fraud, breach of good faith, or punitive damages, on the basis that Galmish was improperly relying on oral representations made by Cicchini prior to the execution of the written agreement. At no time prior to jury deliberations did Cicchini object to the content of the trial court's charge on punitive damages, let alone specify the grounds of the objection that he now raises on appeal. Under these circumstances, this portion of Cicchini's fourth assignment of error may not be considered on appeal. See Civ.R. 51(A); *Leber v. Smith* (1994), 70 Ohio St.3d 548, 552, 639 N.E.2d 1159, 1162; *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, paragraph one of the syllabus; *Stores Realty Co. v. Cleveland Bd. of Bldg. Stds. & Bldg. Appeals* (1975), 41 Ohio St.2d 41, 70 O.O.2d 123, 322 N.E.2d 629.

{¶ 33} Accordingly, we find no error with regard to the award of punitive damages.

III

Prejudgment Interest

{¶ 34} Cicchini's fifth assignment of error in the court of appeals can be divided into two parts. In the first part, Cicchini asserts that "[t]he trial court erroneously added prejudgment interest to the plaintiff's contract judgment when (a) the plaintiff did not seek interest on the contract in the complaint or at the trial, (b) the plaintiff ultimately sought prejudgment interest for a tort claim rather than her contract claim."

{¶ 35} In support, Cicchini argues that the trial court "awarded prejudgment interest as part of the damages, and not as a sanction for failure to negotiate. * * * [T]he court clearly limited the prejudgment interest to circumstances where the

14

related damages were 'measurable with some degree of certainty prior to trial,' a rule applicable solely to contract interest claims, and cited its reliance on a Supreme Court decision [*Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 590 N.E.2d 737] that concerned interest on contract rather than tort claims." According to Cicchini, it is the trial court's function to determine prejudgment interest in tort actions, but only "[t]he trier of fact determines prior contract interest as part of [recoverable] damages."

{¶ 36} These arguments, however, are fundamentally flawed because the trial court did not award prejudgment interest under R.C. 1343.03(A), which "is the only subsection [in R.C. 1343.03] that refers to judgments arising out of contract." *Royal Elec. Constr. Corp. v. Ohio State Univ*. (1995), 73 Ohio St.3d 110, 118, 652 N.E.2d 687, 693 (Moyer, C.J., concurring in part and dissenting in part). Instead, the trial court awarded prejudgment interest pursuant to R.C. 1343.03(C), which provides for prejudgment interest "in a civil action based on tortious conduct." In so doing, the trial court correctly cited *Digital & Analog Design Corp*., *supra,* 63 Ohio St.3d at 660, 590 N.E.2d at 741, for the proposition that prejudgment interest applies only to the compensatory damages award, as "only those damages * * * would have been measurable with some degree of certainty prior to trial." Contrary to Cicchini's assertions, however, our decision in *Digital & Analog Design Corp*. involved the interpretation and application of R.C. 1343.03(C), not 1343.03(A). *Id*. at 659, 590 N.E.2d at 740. Thus, the trial court did not err in adding prejudgment interest to Galmish's contract judgment because the trial court did not do so.

{¶ 37} Moreover, even if we accepted Cicchini's arguments on this point, we would have to conclude that Cicchini invited the error. Cicchini stated to the trial court: "This was a contract case. * * * So if this Court deems that interest should be applied, it should apply the interest merely to the contract portion of the award." This is directly contrary to Cicchini's position on appeal, which is that the trial court had no authority to award prejudgment interest in the contract claim.

**{¶ 38}** In the second part of his fifth assignment of error, Cicchini asserts that "the trial court failed to conduct the mandatory evidentiary hearing for prejudgment interest on a tort claim." Instead, Cicchini argues, the trial court "relied exclusively on counsels' [*sic*] briefs and oral arguments."

**{¶ 39}** R.C. 1343.03(C) requires that the trial court determine the issue of prejudgment interest "at a hearing held subsequent to the verdict or decision in the action."[3] Thus, "the trial court must hold a hearing on the motion [for prejudgment interest]." *Moskovitz v. Mt. Sinai Med. Ctr*. (1994), 69 Ohio St.3d 638, 658, 635 N.E.2d 331, 347. But the trial court *did* hold a hearing on Galmish's motion for prejudgment interest. At that hearing, which was held on October 10, 1997, Cicchini made no attempt, and expressed no desire, to present any evidence, nor did he request a continuance of the hearing in order to do so.

**{¶ 40}** However, it appears to be Cicchini's contention that the hearing was not "evidentiary" in the sense that Galmish failed to present evidence of the parties' efforts to settle the case. In his reply brief to the court of appeals, Cicchini argues that it was not his "burden to prove that he made the required settlement effort." Instead, Galmish "had the initial burden of proving defendant Cicchini's failure to make a good faith effort to settle the case."

**{¶ 41}** In support, Cicchini relies on *Moskovitz, supra*, 69 Ohio St.3d at 659, 635 N.E.2d at 348, where we established that under R.C. 1343.03(C), "it is incumbent on a party seeking an award to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such

---

3. R.C. 1343.03(C) reads as follows:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." 139 Ohio Laws, Part I, 2035.

factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle."

{¶ 42} At the October 10, 1997 prejudgment interest hearing, Galmish's counsel stated that Galmish had made a pretrial settlement offer of $750,000, but Cicchini never made any offer to settle and refused to engage in any settlement negotiations. Although these statements are not evidence of a written offer to settle, they are, under the circumstances of this case, "something equally persuasive." This is because the trial court was already aware of the parties' settlement efforts by virtue of its own attempts to facilitate settlement. Moreover, Cicchini has never disputed the accuracy or veracity of these representations. Instead, Cicchini's stated position at hearing was that he was under no obligation to make an effort to settle with Galmish because he had a "good faith basis" for believing that "he was not owing any money to her." Thus, the trial court committed no error in relying on oral arguments to ascertain the parties' efforts at settlement.

{¶ 43} In determining whether these efforts were reasonable, the trial court is not limited to the evidence presented at the prejudgment interest hearing. The court may also review the evidence presented at trial, as well as its prior rulings and jury instructions, especially when considering such factors as the type of case, the injuries involved, applicable law, and the available defenses. Otherwise, "the hearing required under R.C. 1343.03(C) may amount to nothing less than a retrial of the entire case." *Moskovitz, supra*, 69 Ohio St.3d at 661, 635 N.E.2d at 350.

{¶ 44} We have reviewed the entire record in this case, including the transcript of proceedings in the prejudgment interest hearing, and find that the trial court was well within its discretion in awarding prejudgment interest pursuant to R.C. 1343.03(C). Galmish's initial demand of $750,000 was reasonable, considering that it left room for a possible midway settlement of $375,000, which is $117,500 less than Galmish's one-half share of the excess proceeds resulting from the sale of the property to Developers. Given the reasonableness of her

demand, and the fact that Cicchini made no offer to settle, Galmish was not obligated to negotiate against herself by unilaterally reducing her offer to settle. See *Galayda v. Lake Hosp. Sys., Inc.* (1994), 71 Ohio St.3d 421, 429, 644 N.E.2d 298, 304. Considering that the nature of Cicchini's fraud was such as to belie any objectively reasonable belief of nonliability, it is certainly not unreasonable or arbitrary to conclude that Cicchini failed to rationally evaluate his potential liability.

**{¶ 45}** Accordingly, we find no error with regard to the award of prejudgment interest.

IV

Attorney Fees

**{¶ 46}** In his sixth assignment of error, Cicchini asserts that "[t]he trial court erroneously awarded attorney fees when (a) the plaintiff had no legal basis to recover fees, and (b) the trial court received inadequate evidence to support its finding that the claimed fees are reasonable."

**{¶ 47}** In support, Cicchini argues that the appropriateness of awarding attorney fees in this case is dependent upon the propriety of the award for punitive damages. Accordingly, "[i]f this Court reverses the punitive damage award, it should likewise reverse the attorney fee award." We agree, but the corollary is also true. "If punitive damages are proper, the aggrieved party may also recover reasonable attorney fees." *Columbus Finance, Inc. v. Howard* (1975), 42 Ohio St.2d 178, 183, 71 O.O.2d 174, 177, 327 N.E.2d 654, 658. In other words, "[a]ttorney fees may be awarded as an element of compensatory damages where the jury finds that punitive damages are warranted." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 558, 644 N.E.2d 397, 402. Since we have found no error with regard to the award for punitive damages, Galmish may also recover reasonable attorney fees.

**{¶ 48}** Cicchini also argues that "the trial court cannot award attorney fees against an adverse party without conducting an evidentiary hearing where that adverse party can cross-examine the witnesses who support the motion." However, such a hearing was held on October 17, 1997, during which Cicchini was afforded full opportunity to present evidence and cross-examine witnesses.

**{¶ 49}** Finally, Cicchini argues that in determining the amount of attorney fees, the trial court relied exclusively on the contingency fee agreement between Galmish and her attorneys without considering the reasonable value of the services rendered. However, the trial court did not simply award attorney fees pursuant to the contingent fee contract. Quite the contrary, the trial court, in its judgment entry dated October 20, 1997, specifically listed, considered, and applied the relevant factors set forth in DR 2-106(B) for determining the reasonableness of fees for legal services.

**{¶ 50}** Accordingly, we find no abuse of discretion with regard to the award of attorney fees.

**{¶ 51}** In light of all the foregoing, the judgment of the court of appeals is reversed. The judgment of the trial court as entered upon the jury verdict is reinstated in its entirety, and the judgments of the trial court on the issues of prejudgment interest and attorney fees are upheld.

*Judgment reversed.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

**{¶ 52}** I respectfully dissent, because I do not believe that Galmish proved that Cicchini broke an enforceable promise.

**{¶ 53}** In a breach-of-contract action, the plaintiff must show the existence of a contract, performance (or readiness and willingness to perform) by the plaintiff,

failure to perform by the defendant, and damages.[4]  In a promissory fraud action, the plaintiff must show a material representation by the defendant, made falsely with knowledge of falsity (or utter disregard for its truth or falsity) and with the intent of misleading the plaintiff into reliance on it, as a result of which the plaintiff justifiably relies on it and is proximately injured thereby.[5]  The majority decides that Cicchini failed to perform as promised, which constitutes the breach, and that he intended not to perform that promise when he made it, which constitutes the fraud.

{¶ 54} But Galmish did not prove that Cicchini failed to perform under the contract;  therefore, there was no breach.  By extension, then, because the fraud here was allegedly the intent to breach, there was no fraud.  The terms of the written agreement required that Cicchini purchase the subject property from Galmish for $765,000.  The agreement further provided that, *if* Cicchini were to sell the property to Developers within a year from the date of that contract, Galmish would receive one-half of the net proceeds.  Nowhere does the agreement obligate Cicchini to sell or endeavor to sell the property within one year.  The agreement conditioned the obligation to share the excess proceeds on the sale taking place within a one-year period.  Because the condition never occurred, the obligation to split the proceeds was never triggered.  Thus, Cicchini's sale of the property beyond the one year and his retention of all proceeds did not constitute a breach of the contract.

{¶ 55} Whether Cicchini, at the time he signed the contract, had no intention of selling the property within a year is wholly irrelevant to the legal merits of this case.  We might speculate that he planned to delay the sale beyond one year, but

---

4. See, *e.g., Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600-601, 649 N.E.2d 42, 44.

5. See *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus;  *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 632, 605 N.E.2d 936, 944.

this changes nothing. By the *terms* of the agreement, Cicchini need only share the excess proceeds if he was unwilling or unable to wait out the one year.

**{¶ 56}** In its efforts to support a decision in Galmish's favor, the majority twice mischaracterizes her claims. First, the majority insists that Galmish's claims are based on her allegations that (1) "Cicchini sought escape from his own *promise to share the excess proceeds* by intentionally and unjustifiably preventing the happening of the condition on which it was based," and (2) "Cicchini harbored this intent at the time he executed the written contract and, therefore, *made a promise with intent not to perform*." (Emphasis added.) If the "promise to share the excess proceeds" is the subject of Galmish's breach claims, as the majority asserts, those claims must fail. That promise entailed sharing the proceeds if, and *only* if, Cicchini sold the property within a year. There could be no unlawful "escape from his promise" where the promise itself was conditional and the condition never occurred.

**{¶ 57}** The majority then switches gears to state, without citing any legal or factual support, that Galmish's claims are based on the promise "implied in the writing that Cicchini would not connive to prevent" the condition that would trigger his obligation to share the proceeds with Galmish—that being the sale of the property within a year. But Galmish alleged in the complaint that Cicchini breached his duty of good faith and fair dealing by breaching the "duty imposed in law requiring Cicchini to * * * refrain from doing any act that would delay or prevent *performance* of the Agreement." (Emphasis added.) This is not the same as alleging that Cicchini was obligated to refrain from delaying a *condition* that would trigger a certain performance. Rather, Galmish's allegation assumes that, in order to "perform" the contract, Cicchini was obligated to try to sell the property within a year. As stated above, the contract contained no such term.

**{¶ 58}** The majority further determines that Galmish's claims "do not seek to establish that Cicchini promised or agreed, collaterally or otherwise, * * * *that*

21

*he would sell or attempt to sell the property within one year*, * * * or even that he would make any effort to sell the property at all." (Emphasis added.) But Galmish alleged exactly that in her complaint—that "Cicchini falsely, fraudulently, and with intent to deceive and defraud Plaintiff, Mary Ann Galmish, represented that if she entered into the Agreement, *he would exercise reasonable diligence to reach an agreement* with Developers Diversified for the sale of the Property *prior to May 27, 1995*, such that she would share in one-half of the proceeds of the sale as provided in the Agreement." (Emphasis added.)

{¶ 59} Galmish makes similar statements in her brief to this court. She asserts that "[t]he appellate court was not willing to find an implied duty on the part of Cicchini to use reasonable efforts to sell the property within one year," and then argues that "this Court should extend the duty established in *Illinois Controls* [to contracts like the one at issue]." Galmish had earlier cited *Illinois Controls*[6] for its determination, according to her, that "one party to a preincorporation agreement [is required] to use reasonable efforts to market the products of the other party—even though the agreement contained no such express promise."

{¶ 60} Contrary to the majority's declaration, then, Galmish was, indeed, basing her claims on Cicchini's alleged promise "that he would sell or attempt to sell the property within one year." As the court of appeals held, the agreement did not require this of Cicchini. And even if Galmish were, in fact, relying on an alleged "implied" promise not to "connive," as the majority insists, nothing at all— much less legal authority or factual support—is offered to explain how such a promise can be properly implied here. This is especially troubling in light of the integration clause in the agreement.

{¶ 61} The majority seems to be advocating that the law of contracts include an implied duty to ensure that another party receives the greatest possible benefit

---

6. *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 639 N.E.2d 771.

22

under a contract. But surely that goes against basic contract law. Written contracts are made so that arguments like the one here can be avoided and parties can conduct themselves with certainty about their contractual obligations and nonobligations. A person who, within the terms of a contract, manipulates circumstances in order to obtain the maximum benefit from the contract does not thereby automatically breach the contract. If one party comes to regret poor judgment or drafting with respect to the contract, that is no basis for implying contractual terms in derogation of an integration clause.

**{¶ 62}** The parties stipulate that the agreement here is unambiguous, and it has not been deemed unconscionable. I agree with the court of appeals that Galmish proved neither breach of contract nor fraud.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

––––––––––––––––––