[Cite as *Allied Erecting & Dismantiling Co., Inc. v. Ohio Edison Co.*, 2011-Ohio-2627.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ALLIED ERECTING AND DISMANTLING CO., INC., et al., | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | CASE NO. 10-MA-25 |
| V. | ) | |
| | ) | OPINION |
| OHIO EDISON COMPANY, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
                              Pleas of Mahoning County, Ohio
                              Case No. 06CV3604

JUDGMENT:                     Affirmed

APPEARANCES:
For Plaintiffs-Appellants     Attorney F. Timothy Grieco
                              Attorney Timothy D. Berkebile
                              44th Floor, 600 Grant Street
                              Pittsburgh, PA 15219

                              Attorney Kevin L. Bradford
                              Attorney Jay M. Skolnick
                              Attorney Peter B. Grinstein
                              Attorney Kathryn A. Vadas
                              20 West Federal St., Suite 600
                              Youngstown, Ohio 44503-1423

For Defendant-Appellee        Attorney John T. Dellick
                              P.O. Box 6077
                              Youngstown, Ohio 44501-6077

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                              Dated: May 26, 2011

DONOFRIO, J.

{¶1} Plaintiffs-appellants Allied Erecting and Dismantling Company, Inc. (AED) and Allied Gator, Inc. (Allied Gator) (collectively Allied) appeal a Mahoning County Common Pleas Court decision awarding a balance due on a contract Allied had with defendant-appellee Ohio Edison Company (Ohio Edison).

{¶2} In early 2006, Allied sought to expand its manufacturing facility. That expansion would require an increase in the power needed for the facility which in turn would require the building of an electrical substation with two transformers.

{¶3} On April 21, 2006, representatives from Allied and Ohio Edison met to discuss construction of the substation and the acquisition of two transformers. Allied was represented by its president, John Ramun, as well as Ed Klein, an electrical draftsman, and Jim Feuse, an engineer for Allied. Ohio Edison was represented by Lisa Nentwick, Senior Account Manager, and John Podnar. According to Ramun, Nentwick and Podnar agreed that Ohio Edison would provide the main substation design, supply electrical components, and solicit and receive bids for the construction of the substation. A cost plus fifteen percent was discussed as the cost of the project.

{¶4} On May 1, 2006, Nentwick sent Ramun a written contract for the design and procurement of the two transformers required for the substation. Attorneys for both Ohio Edison and Allied reviewed the contract and negotiations followed. By the time Ramun signed the contract on May 8, 2006, the price for the transformers was $833,657.52.

{¶5} In August 2006, representatives of Allied and Ohio Edison met again to discuss construction of the substation. Ohio Edison indicated that the mark-up was going to have to be twenty-seven percent, not the fifteen percent discussed in April. Allied objected to the pricing and further discussions for the design and construction of the substation ended.

{¶6} On September 14, 2006, Allied sued Ohio Edison for specific performance and an accounting. Allied alleged that the April 21, 2006 discussions between representatives from both Ohio Edison and Allied resulted in an agreement

for Ohio Edison to design and build Allied an electrical substation, including the procurement of two transformers for the substation. In the weeks following the filing of the complaint, the parties attempted to conciliate the dispute and Ohio Edison produced documents pertaining to the design of the substation. According to Allied, this caused a delay in Allied constructing the substation thus requiring it to store the two transformers.

{¶7} As a result, Allied filed an amended complaint on May 18, 2007, setting forth two counts. The first count was for an accounting to determine Ohio Edison's actual costs in purchasing the two transformers. Due to the alleged breach of the alleged agreement to design and build the substation, Allied contends Ohio Edison should not be allowed to profit from the mark-up of the transformers. The second count was for breach of what Allied perceived was a contract that resulted from the April 21, 2006 meeting.

{¶8} Ohio Edison filed an answer and two counterclaims. The first count of the counterclaim sought declaratory judgment that no agreement had been reached between Allied and Ohio Edison for Ohio Edison to design and build the substation. Ohio Edison alleged that it performed only preliminary conceptual work to enable Ohio Edison to begin pricing the substation design and construction. The second counterclaim was for breach of the written contract between Ohio Edison and Allied for Ohio Edison to obtain the two transformers. Ohio Edison contended that there was a balance due on the transformers of $166,731.50 plus interest.

{¶9} On August 20, 2009, Ohio Edison filed a motion for partial summary judgment. On November 5, 2009, a magistrate sustained the motion in part and overruled it in part. The magistrate found that the contract between Ohio Edison and Allied regarding the acquisition of the two transformers was clear, unambiguous, and susceptible of only one interpretation. The magistrate noted that the contract contained no reference that it was contingent upon any other condition or agreement. Therefore, the magistrate concluded that parol evidence was inadmissible to vary or otherwise contradict that contract. Consequently, the magistrate ordered Allied to

pay the balance remaining due on the transformers. However, the magistrate did find that there were genuine issues of material fact concerning whether the parties entered into an enforceable oral contract to design and build the substation. Following a premature appeal to this court and the subsequent denial of Allied's objections to the magistrate's decision, this timely appeal followed.

{¶10} Allied advances three assignments of error. Allied's first assignment of error states:

{¶11} "The trial court committed reversible error when it granted Defendant-Appellee's Motion for Partial Summary Judgment and found that parol evidence of the April 21, 2006 Oral Contract, was inadmissible to demonstrate that the Written Transformer Contract was a part of the overarching April 21, 2006 Oral Contract."

{¶12} The thrust of Allied's argument on appeal is that the transformer contract was part of an overarching agreement to design and build a substation which was orally agreed upon at the April 21, 2006 meeting. Allied believes parol evidence of the April 21, 2006 discussions should have been allowed to have been admitted to establish this overarching agreement. Ohio Edison views the transformer contract and the April 21, 2006 discussions separately. It views the transformer contract as a wholly integrated contract upon which Allied has not fully paid the balance due and the April 21, 2006 discussions as evidence it performed only preliminary conceptual work to enable Ohio Edison to begin pricing the substation design and construction. It contends any discussions that occurred at the April 21, 2006 meeting are barred by the parol evidence rule to vary or alter the terms of the transformers contract.

{¶13} "The parol-evidence rule is a principle of common law providing that 'a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing.' Black's Law Dictionary (8th Ed.2004) 1149; see, also, *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 26, 734 N.E.2d 782, quoting 11 Williston on Contracts (4th Ed.1999) 569-570, Section 33:4. The rule 'operates to

prevent a party from introducing extrinsic evidence of negotiations that occurred before or while the agreement was being reduced to its final written form,' Black's Law Dictionary at 1149; see, also, *Ed Schory & Sons, Inc. v. Francis* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, and it 'assumes that the formal writing reflects the parties' minds at a point of maximum resolution and, hence, that duties and restrictions that do not appear in the written document * * * were not intended by the parties to survive.' Black's Law Dictionary at 1150." *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, at ¶7.

{¶14} There are as many as six exceptions or limitations to the parol evidence rule. See *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, at ¶27, citing *Russell v. Daniels-Head & Assocs., Inc.* (June 30, 1987), 4th Dist. No. 1600. Under this assignment of error, Allied advances three sub-arguments representing three possible exceptions or limitations to the parol evidence rule that it believes would allow admission of the discussions that took place at the April 21, 2006 meeting.

{¶15} The first exception Allied proposes involves contingent or dependent agreements:

{¶16} "The Trial Court Should Have Permitted Parol Evidence Of The Parties' April 21, 2006 Oral Agreement Because This Evidence Showed That The Written Transformer Contract Was Contingent Upon The Parties' Overall Agreement to Design And Build A Substation."

{¶17} Under this issue presented for review, Allied relies heavily on *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 31 OBR 587, 511 N.E.2d 106, to argue that "the parol evidence rule will not bar a party from introducing evidence that one agreement is unenforceable because it was contingent or dependent upon another agreement." In *Center Ridge*, Thomas Ganley attempted to buy an automobile dealership, Ed Stinn Chevrolet, from Ed Stinn. The property upon which the dealership sat was owned by Barbara Stinn. The parties executed two separate agreements for the purchase. The first one was an assets agreement concerning the

dealership itself. The second was a real estate agreement for the property upon which the dealership sat. An addendum to the assets agreement stated that it was conditioned upon the purchase of the real estate. The real estate agreement specifically referenced the sale of the assets. Chevrolet withheld approval of a transfer of the dealership and the closing date for the assets agreement elapsed. Ganley attempted to then close on the real estate agreement and Barbara Stinn refused. Ganley then sought specific performance of the real estate agreement.

**{¶18}** At trial on the specific performance claim, Ganley attempted to introduce parol evidence that the agreements were separate and independent of each other. The Stinns attempted to introduce parol evidence that the agreements were interrelated and contingent. The trial court found that the agreements were intended to be contingent upon one another and denied Ganley's request for specific performance. Ganley argued on appeal that it was error for the trial court to allow parol evidence that the agreements were contingent upon one another.

**{¶19}** The Ohio Supreme Court stated, "[t]he evidence submitted as to whether the real estate agreement was contingent upon the consummation of the assets agreement did not vary or alter the terms of the real estate agreement; it merely explained the operation of the contract as intended by the parties." Id. at 313, 31 OBR 587, 511 N.E.2d 106.

**{¶20}** Allied's reliance on *Center Ridge* is misplaced. First, referencing the parol evidence rule, the Court noted that "the admission of parol testimony to explain certain *ambiguous* terms not inconsistent with or contradictory to the language of the contract was nevertheless proper in this cause." (Emphasis added.) Id. In *Center Ridge*, the Court specifically found that "the real estate agreement was not altogether complete on its face, but rather its very terms indicated that it was part of a larger transaction involving the sale of an automobile dealership."

**{¶21}** In this case, the transformer contract contains no such ambiguity. Indeed, it specifically states just above the signature line:

**{¶22}** "THE OHIO EDISON COMPANY GENERAL TERMS AND

CONDITIONS, INCLUDING THE WARRANTY AND LIMITATIONS OF LIABILITY ATTACHED HERETO ARE INCORPORATED INTO AND MADE PART OF THIS AGREEMENT. BY ITS SIGNATURE THE PARTY ACKNOWLEDGES THAT IT HAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS, AND THAT IT CONSTITUTES THE ENTIRE AGREEMENT RESPECTING THE SUBJECT MATTER HEREOF."

**{¶23}** Allied's president signed the contract just below this provision. Additionally, Allied's attorneys had the opportunity to review and negotiate its terms. Consequently, it cannot be said that this agreement did not constitute the entire agreement when by its very terms it states that it is the entire agreement.

**{¶24}** The second possible exception or limitation Allied proposes is partial integration:

**{¶25}** "The May 8, 2006 Written Transformer Contract Is Only Partially Integrated And, Thus, The Parol Evidence Rule Does Not Bar Evidence Of The April 21, 2006 Oral Agreement, Which Does Not In Any Manner Contradict The Written Agreement."

**{¶26}** Allied argues that another basis for allowing admission of the April 21, 2006 design-build discussions is that the transformer contract was a partial integration because it did not cover the subject matter of the April 21, 2006 discussions.

**{¶27}** Another one of the exceptions to the application of parol evidence is when a contract is not truly a final written integration of the parties' agreement. *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 29, 734 N.E.2d 782. "An 'integration' for these purposes is '[t]he full expression of the parties' agreement, so that all earlier agreements are superseded, the effect being that neither party may later contradict or add to the contractual terms.' Black's Law Dictionary (9th Ed.2009) 880. If an integration is a 'complete integration,' then it fully expresses the intent of the parties, and parol evidence is inadmissible. Id. On the other hand, if an integration is a 'partial integration,' then it does not fully express the parties' intent, and '[p]arol

(extrinsic) evidence is admissible to clear up *ambiguities* with respect to the terms that are not integrated.'" (Emphasis added.) *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, at ¶28.

**{¶28}** Further, as the Ohio Supreme Court explained in *TRINOVA Corp. v. Pilkington Bros., P.L.C.* (1994), 70 Ohio St.3d 271, 276, 638 N.E.2d 572:

**{¶29}** "Integration is a rule of substantive law to be decided by the trial judge in the first instance. See 4 Williston on Contracts 3d (1961) 955, Section 633. The question of partial integration must be determined from the *four corners of the document itself* and not by a prefatory table of documents as [appellant] suggests. See 2 Restatement of the Law 2d, Contracts (1981) 117-118, Section 210(3). Furthermore, in the case of a partial integration, only consistent additional terms may be added, not inconsistent terms." (Emphasis added.)

**{¶30}** In this case, the partial integration exception is not applicable. Allied has not pointed to any ambiguity within the four corners of the transformer contract that would suggest that the contract is partially integrated. To the contrary, as the trial court found, the transformer contract is clear, unambiguous, and susceptible of only one interpretation. It was for the sale of two transformers with certain specifications for a total cost of $833,657.52.

**{¶31}** Furthermore, as indicated in the discussion concerning contingent/dependent agreements exception, the contract specifically contained an integration clause stating that the agreement was wholly integrated:

**{¶32}** "THE OHIO EDISON COMPANY GENERAL TERMS AND CONDITIONS, INCLUDING THE WARRANTY AND LIMITATIONS OF LIABILITY ATTACHED HERETO ARE INCORPORATED INTO AND MADE PART OF THIS AGREEMENT. BY ITS SIGNATURE THE PARTY ACKNOWLEDGES THAT IT HAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS, AND THAT IT CONSTITUTES THE ENTIRE AGREEMENT RESPECTING THE SUBJECT MATTER HEREOF."

**{¶33}** The third exception or limitation Allied proposes is promissory fraud:

{¶34} "The Parol Evidence Rule Does Not Bar Evidence That Ohio Edison's Representatives Fraudulently Misrepresented Their Authority And Ability To Enter Into An Overall Agreement To Design and Build A Substation."

{¶35} "[T]he parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 28, 734 N.E.2d 782.

{¶36} "[T]his principle does not lose its force merely because the considered written agreement contains an integration clause. The parol evidence rule applies, in the first instance, only to integrated writings, and an express stipulation to that effect adds nothing to the legal effect of the instrument. The presence of an integration clause makes the final written agreement no more integrated than does the act of embodying the complete terms into the writing. Thus, the presence of an integration provision does not vitiate the principle that parol evidence is admissible to prove fraud." Id.

{¶37} However, the parol evidence rule may not be avoided "by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms." *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph three of the syllabus.

{¶38} In this case, Allied argues that it reasonably relied on Ohio Edison's promise to build and design the electrical substation on cost plus fifteen percent basis. In his affidavit, Allied's president, John Ramun maintains he would have never ordered the transformers had he known that there was no deal for completion of the substation.

{¶39} Allied's fraud argument is flawed for two reasons. First, as Ohio Edison aptly points out, Allied never pled fraud with particularity as required by Civ.R. 9(B). Civ.R. 9(B) provides:

**{¶40}** "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with *particularity*. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." (Emphasis added.)

**{¶41}** The circumstances constituting fraud means the plaintiff must state the time, place and content of the false representation, the fact misrepresented, and what was obtained or given as a consequence of the fraud. The plaintiff must allege, at a minimum, the time, place and contents of the misrepresentation on which they relied. Generally, the pleadings must be sufficiently particular to appraise the opposing party of the claim against him. *Haddon View Investment Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 158-159.

**{¶42}** Moreover, failure to plead fraud with particularity results in waiver of that claim. *Klasa v. Rogers*, 8th Dist. No. 83374, 2004-Ohio-4490, at ¶39.

**{¶43}** In this instance, Allied filed a complaint and an amended complaint and in neither instance pled fraud at all, let alone with any particularity. Consequently, Allied failed to comply with Civ.R. 9(B) and waived that claim.

**{¶44}** Secondly, the waiver issue aside, Allied has not fulfilled all the elements of a fraud claim. The elements of fraud consist of "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, at ¶47, citing *Gaines v. Preterm-Cleveland Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709.

**{¶45}** Allied's assertion that it reasonably relied on Ohio Edison's promise to design and build the substation on the basis of cost plus fifteen percent when it purchased the transformers does not amount to fraud. Allied has not averred that Ohio Edison's representatives made the alleged representation falsely, with

knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred. In fact, Allied admits that it agreed to pay $833,657.52 for the two transformers.

{¶46} Accordingly, Allied's first assignment of error is without merit.

{¶47} Allied's second assignment of error states:

{¶48} "The trial committed reversible error when it granted Defendant-Appellee's Motion for Partial Summary Judgment and found that the amount of $166,731.50 together with interest at the contractual rate of 1½% is due and owing from Plaintiff-Appellee."

{¶49} Allied argues that Ohio Edison's breach of the April 21, 2006 agreement "discharges" its duty to fully perform (i.e., pay the balance) on the transformer contract. The entire premise of the Allied's argument under this assignment of error is flawed. Allied's argument under this assignment of error assumes that the transformer contract was part of an overarching agreement to design and build a substation. As already indicated, there were two separate contracts – the transformers contract and whatever contract arose from the April 21, 2006 discussions. As the trial court determined, there are genuine issues of material fact concerning whether an oral contract was created at that April 21, 2006 meeting. And Allied has not assigned error to the trial court's determination in that regard. Whether or not a contract existed as a result of the April 21, 2006 discussions and whether or not Ohio Edison breached that contract will be for a jury to determine.

{¶50} Accordingly, Allied's second assignment of error is without merit.

{¶51} Allied's third assignment of error states:

{¶52} "The trial court committed reversible error when it granted Defendant-Appellee's Motion for Partial Summary Judgment and found that Plaintiff-Appellant is not entitled to an accounting as prayed for in Count I of its Amended Complaint."

{¶53} For reasons unknown, while Allied sets forth this assignment of error in the statement of the assignments of error and issues presented for review, it presents absolutely no argument separately or otherwise in support of it. App.R. 16(A)(7)

provides:

**{¶54}** "(A) Brief of the appellant

**{¶55}** "The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

**{¶56}** "* * *

**{¶57}** "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."

**{¶58}** Furthermore, App.R. 12 governing determination and judgment on appeal provides:

**{¶59}** "(A) Determination

**{¶60}** "* * *

**{¶61}** "(2) The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

**{¶62}** Consequently, the court can disregard this assignment of error on the basis of App.R. 16(A)(7) and 12(A)(2). See, also, *Cincinnati Ins. Co. v. Schwerha*, 7th Dist. No. 04 MA 257, 2006-Ohio-3521, ¶¶41-42; *Portsmouth v. Internatl. Assn. of Fire Fighters, Loc. 512* (2000), 139 Ohio App.3d 621, 626, 744 N.E.2d 1263; *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 186, 619 N.E.2d 469; *State v. Caldwell* (1992), 79 Ohio App.3d 667, 677, 607 N.E.2d 1096.

**{¶63}** Appellate brief deficiencies aside, this assignment of error would still fail. If there has been a breach of contract, Allied would be entitled to damages, not an accounting. Allied does not dispute the amount that it agreed to pay for the transformers and does not dispute the amount of the unpaid balance. As indicated earlier, Allied views the unpaid balance as the damages it suffered from what it perceived as Ohio Edison's failure to perform the design-build agreement that it

contends was reached at the April 21, 2006 meeting.  Again, as the trial court found, these were two separate agreements – the existence of one of which needs to be decided by a jury.

{¶64}  Accordingly, Allied's third assignment of error is without merit.

{¶65}  The judgment of the trial court is hereby affirmed.


Vukovich, J., concurs.

DeGenaro, J., concurs.