OPINION
Appellants Linda Ejzak, John Ejzak, Kim Foreman, and Christopher Ejzak appeal a judgment of the Richland County Court of Common Pleas, Probate Division, approving and settling the second partial account on the estate of John Carew:
 I "THE COURT BELOW ERRED IN REALLOCATING PROCEEDS FROM THE SALE OF REAL ESTATE TO THE COLLECTION OF RENTAL INCOME IN ORDER TO SATISFY THE EXECUTOR'S ACKNOWLEDGED DEFICIENCY IN RENTAL COLLECTIONS."
 II "THE COURT BELOW ERRED IN GRANTING A CREDIT FOR COLLECTED RENT WITHOUT DEDUCTING $1,006.00 FOR A RETURNED CHECK AS REFLECTED IN THE EXECUTOR'S OWN EXHIBITS."
On July 25, 1999, John H. Carew died. In his will he named appellee, Attorney David Remy, as his executor. The decedent's estate contained several assets including realty in three states. This appeal centers on property located at 90 West Sixth Street in Mansfield, Ohio.
The subject property is a commercial building appraised at $44,000. At the time of decedent's death, the building was being leased for $500 per month by Rebecca and Ronald Harvey, doing business as H H Cleaning. In March of 2000, the Harveys and appellee executed a purchase agreement for the property in the amount of $52,000, which allegedly included a rental arrearage in the amount of $8,000. Because the Harveys were experiencing financial difficulties, the property was purchased by Ephraim and Lydia Yoder.
On October 25, 2001, the beneficiaries under the will, decedent's children and grandchildren, appellants, Linda Ejzak, John Ejzak, Kim Foreman and Christopher Ejzak, filed exceptions to the account and a motion to remove executor, surcharge executor, deny fiduciary fees and deny attorney fees. Appellants claimed appellee failed to account for rent due from the subject property. A hearing on these issues was held on December 11, 2001. By opinion and judgment entry filed January 7, 2002, the trial court found back rent was due in the amount of $11,500. After allocating the $8,000 from the sale of the property to the rent arrearage, the trial court charged appellee $2,500 for the remaining balance.
 I
Appellant argues that the trial court erred in allocating $8,000 of the sale proceeds of the real estate as past rent.
A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Company v. Foley Construction Company (1978),54 Ohio St.2d 279, syllabus. A reviewing court must not substitute its judgment for that of the trial court where there is some competent and credible evidence supporting the trial court's judgment. Myers v.Garson (1993), 66 Ohio St.3d 610, 1993-Ohio-9.
In its opinion and judgment entry filed January 7, 2002, the trial court made the following specific findings on this issue:
 "5. Rent of $500.00 per month on 90 West Sixth Street for period of 8/01/99 to 6/26/01 in the amount of $11,500.00. Deposit records show $1,000.00 on 10/25/99 and $8,000.00 over the appraised value from sale proceeds on 6/26/01. Executor sold the real estate without a real estate commission which at 7% of the appraised value would have been $3,080.00, however, this will not be allowed as a rental credit. The uncontroverted testimony of the fiduciary was that the difference between the appraised value of $44,000.00 and the sale price of $52,000.00 was to repay to the estate rentals that had not been made. The estate received the equivalent of 18 months of the 23 months that were due but the fiduciary is charged $2,500.00 for the five (5) months of uncollected rent."
Appellants point out the "Fiduciary's Account" and the "Receipts and Disbursements" filed October 11, 2001, list under "Proceeds from sale of real estate" and "Proceeds Sale of 90 W. 6th St., Mansf., OH" respectively, the amount of $49,589.75. Based upon these accounting entries, appellants argue the actual sale of the subject property was $49,589.75 and not the discounted amount allowed by the trial court.
During the hearing, appellee admitted he was responsible for collecting rent from the Harveys. T. at 52. The Harveys paid in August, September and October of 1999, but ran into financial difficulties and stopped paying despite his insistence. T. at 52-53. The property was eventually sold in March of 2001. T. at 53. Appellee described the sale of the property and the $8,000 rent arrearage as follows:
 "Mr. Carew [decedent] had rented the property to the Harveys and was renting it to them at the time of his death. In discussions with Mr. Harvey or Mr. Carew relative to putting the will together, he indicated to me that he had an agreement or a letter of intent, let's put it that way, to sell the property to the Harveys for $18,000.
 "* * * [After Mr. Carew died] I had a new discussion with the Harveys relative to the sale of the house, indicated to them that I needed to sell it to them for at least the appraised value, and that in addition to that, I needed to collect the rental arrearage on the property that was had accumulated.
"They agreed and understood that that needed to be done, and they wanted the property very badly, and so we entered into a sales agreement whereby the price of the purchase would be $52,000. It was assumed, inferred between the parties and agreed to between the parties that the difference between the 44 and the 52 was the rental arrearage due and owing at the time of the signing of the sales contract." T. at 54 and 55-56, respectively.
The purchase agreement was admitted into evidence as Movants' Exhibit 16 and is silent as to the allocation of $8000 of the purchase price as a rent arrearage. The property was never sold to the Harveys but to the Yoders. T. at 57. Appellee described the sale to the Yoders as follows:
 "They [the bank] would not loan the money to the Harveys directly because the Harveys had bankruptcy problems and were a credit risk, but if the Harveys could find someone to front the money for them or sign for them, they would do that.
 "The Harveys found a Mr. and Mrs. Yoder who would sign for them, would take the loan in their name. The Harveys are paying the note off, paying the it was a bank requirement. When we got to the date of closing the bank required they would do an assignment of the contract from the Harveys to the Yoders. They did that. I have a copy of it. Not attached to this exhibit here, but I do have a copy of it, and that's how the Yoders got involved. The actual users and beneficiaries of the property are the Harveys. The actual occupants of the property are the Harveys." T. at 58.
Appellants argue that appellees' explanation violates the parole evidence rule, which provides that absent fraud, mistake or other invalidating cause, the final written integration of an agreement between the parties may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements. Galmish v. Cicchini,90 Ohio St.3d 22, 27, 2000-Ohio-7. However, counsel for appellants elicited this testimony from appellee during cross-examination, and appellants never moved to strike, nor did they ask the trial court to disregard this evidence. We therefore must find plain error to reverse.
In a civil case, plain error is defined as error which seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. Goldfess v. Davidson, 59 Ohio St.3d 116,1997-Ohio-401, syllabus.
As the plain error doctrine originated as a criminal law concept, reviewing courts must proceed with utmost caution in applying the doctrine in a civil case, limiting it strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. Id. at 121.
The admission of parole evidence in the instant case did not rise to this extremely difficult standard of plain error in a civil case. The trial court, as the sole finder of fact and judge of credibility, could conclude based on appellee's testimony that $8,000 of the sale price was intended to cover past due rent.
The judgment is not against the manifest weight of the evidence.
The first assignment of error is overruled.
 II
Appellants argue that the court erred in not charging appellee with $1,006 in rental income, as rent collected on the subject property. Appellants argue that if the executor receives a credit for $1,000 of rent collected, he should have the recovery reduced by $1,006 in funds and fees which he failed to collect. Appellant's brief, Page 6.
The evidence reflects that on October 25, 1999, a deposit was made into the estate checking account which included $1,000 in rental payment from the Harveys. The court allowed this amount as a rental credit. On April 19, 2001, a second check for $1,000 in rental payments was deposited into the estate checking account. On April 24, 2001, that check was returned, and a $6.00 fee was assessed. No immediate attempt was made to re-collect that check, and the uncollected amount became part of the $8,000 arrearage collected on June 26, 2001, at the closing on the property. The court did not err in failing to give separate credit for the $1,006.
The second assignment of error is overruled.
The judgment of the Richland County Court of Common Pleas, Probate Division, is hereby affirmed.
By GWIN, P.J., and EDWARDS, J. concur FARMER, J., dissents