**RYLEE LTD., Appellant,**

v.

**IZZARD FAMILY PARTNERSHIP, Appellee.**

[Cite as *Rylee Ltd. v. Izzard Family Partnership*,
178 Ohio App.3d 172, 2008-Ohio-4506.]

Court of Appeals of Ohio,
Third District, Union County.

No. 14–08–12.

Decided Sept. 8, 2008.

Barry H. Wolinetz, for appellant.

John M. Eufinger and Victoria Stone Moledor, for appellee.

WILLAMOWSKI, Judge.

{¶ 1} Plaintiff-appellant, Rylee Ltd. ("Rylee"), brings this appeal from the judgment of the Court of Common Pleas of Union County finding in favor of defendant-appellee, Izzard Family Partnership ("Izzard"), and determining that no valid contract exists. For the reasons set forth below, the judgment is affirmed.

{¶ 2} Izzard owns two adjacent properties: one on Main Street and one on Fifth Street. The Main Street building faces east, and the rear of it abuts and shares a common wall with the Fifth Street building, which faces North. The Main Street building is occupied by a driving school and a copy store. The Fifth Street building contains the Old Town Inn. Off the side of the restaurant is an extra dining room that faces Fifth Street and abuts the Main Street building.

{¶ 3} Izzard offered the Main Street building for sale. Rylee was interested in the building and had its real estate agent, Doug Tannenbaum, investigate the property. Tannenbaum requested documentation on all existing lessees and the rental history of the property. He received information regarding the driving school and copy store, but nothing concerning the Old Town Inn. Rylee visited the building and was aware of both businesses located in the Main Street building. However, Tannenbaum testified that he and Rylee were unaware that any portion of the Old Town Inn·was included in the Main Street building. On March 16, 2007, a final contract was entered into by Rylee and Izzard for the sale of the Main Street Building.

{¶ 4} Prior to closing, an inspection was done on the Main Street building. A view of the buildings from the street and inside the buildings would indicate that the Main Street building does not include any portion of the Old Town Inn. However, it was subsequently learned that a portion of the Old Town Inn's back dining room encroaches upon the Main Street parcel. Upon learning of this encroachment, Izzard notified Rylee of the problem, which is the first that Rylee learned that the dining room was part of what they were attempting to purchase. Izzard then attempted to rescind the contract due to a mutual mistake. Rylee proceeded to schedule the closing anyway.

{¶ 5} On June 5, 2007, Rylee filed suit for breach of contract and sought specific performance. Izzard filed its answer and counterclaim on July 5, 2007. A bench trial was held on November 5, 2007. On January 25, 2008, the trial court held that there was no valid contract and entered judgment for Izzard. Rylee appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

The trial court erred in finding there is not an enforceable contract.

### Second Assignment of Error

The trial court erred in finding that a mutual mistake existed.

### Third Assignment of Error

The trial court erred in finding [Rylee] was not entitled to specific performance.

{¶ 6} In the first assignment of error, Rylee claims that the trial court erred in allowing parol evidence because the contract was unambiguous. Rylee then claims that the trial court erred by using the parol evidence to find that there was no enforceable contract. "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 27, 734 N.E.2d 782. Parol evidence is admissible to demonstrate a mutual mistake. *City Life Dev., Inc. v. Praxus Group, Inc.*, 8th Dist. No. 88221, 2007-Ohio-2114, 2007 WL 1290169, ¶ 35. The trial court must review the parol evidence to determine the intent of the parties. Id. at ¶ 32. "Such extrinsic evidence may include: (1) the circumstances surrounding the parties at the time the contract was made; (2) the objectives the parties intended to accomplish by entering into the contract; and (3) any acts by the parties that demonstrate the construction they gave to their agreement." Id.

{¶ 7} Here, the language of the contract was clear. However, Izzard claimed that the contract should be rescinded due to mutual mistake. The claim of mutual mistake required the trial court to take parol evidence in order to learn what the intentions of the parties were and what the underlying facts were. The trial court did what it was permitted to do and thus did not err in considering the parol evidence.

{¶ 8} In order to determine whether the trial court erred in finding an unenforceable contract, this court must consider the second assignment of error—that the trial court erred in finding a mutual mistake. If a mutual mistake was made, the contract was properly determined to be unenforceable. A mutual mistake can form the basis for rescission of a real estate purchase contract when the mistake is material to the contract and when the parties are not negligent in failing to discover the mistake. *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 632 N.E.2d 507. A mistake is material when it frustrates the intent of the parties. Id. "If the judgment of the trial court is supported by

some competent, credible evidence, going to the essential elements of the case, the judgment will not be reversed unless it is against the manifest weight of the evidence." Id. at 353, 632 N.E.2d 507.

{¶ 9} Here, Richard Izzard claims that he was unaware that the dining room from the Fifth Street building was actually located on the parcel for the Main Street building. A review of the photograph indicates that the dining room has a main entrance and windows on Fifth Street and shares a roof line with the Fifth Street building. The Main Street Building has its main entrance and windows on Main Street and has a roof line significantly higher than those on Fifth Street. Although the dining room shares a wall with the Main Street building, as well as the Fifth Street building, there is no access to the dining room from the Main Street building. The only access to the dining room is from either the door on Fifth Street or through the Old Town Inn located in the Fifth Street building.

{¶ 10} Tannenbaum testified that he had no notice that the dining room was part of the Main Street building parcel. He testified that Rylee had agreed to purchase the Main Street building, which they believed had only two tenants. He further testified that they did not believe at the time of the contract that they were purchasing the dining room of the Old Town Inn. This testimony is supported by the complaint filed by Rylee. Rylee's complaint claims that Izzard breached the contract by allowing the Old Town Inn to encroach on the property by having the dining room on the Main Street parcel. The complaint states that Rylee had no knowledge of the encroachment and could not have discovered the encroachment upon reasonable inspection. However, Rylee also claims that Izzard should have known. It appears to this court that Rylee is trying to claim that it could not have known that the restaurant dining room was part of the Main Street building for determining encroachment, but that no mistake was made by the parties as to what was being contracted for.

{¶ 11} After reviewing this evidence, the trial court determined that the parties had made a mutual mistake as to what was being sold. The basis for this decision is that neither party was aware that the Old Town Inn's dining room was actually part of the Main Street parcel at the time the contract was signed. Both Rylee and Izzard admitted through their representatives that they did not have actual knowledge of this fact and that reasonable inspection would not have revealed it. This mistake is material to the contract because it concerns exactly what the contract was covering. Neither party knew exactly what the sale entailed. Without this knowledge, no real "meeting of the minds" has occurred. Thus, the trial court did not abuse its discretion by concluding that a mutual mistake was present and granted the rescission of the contract.

{¶ 12} Additionally, even if the trial court erred in determining that a mutual mistake was present, a unilateral mistake clearly was made. Izzard was

unaware of the extent of the property it was selling. Generally, a unilateral mistake does not prevent the formation of a contract. 69 Ohio Jurisprudence 3d (2008), Mistake, Section 6. However, if the remedy requested is not reformation of the contract, but rather rescission, a mistake need not be mutual. Id. "Rescission for unilateral mistake may be granted if the position of the parties has not changed in such a way that they cannot be restored to their original rights." Id. Here, Izzard requested rescission of the contract in its counterclaim. The mistake was realized prior to the closing. The positions of the parties had not changed in such a way that would prevent the return of the parties to their original positions. Thus, even if the trial court erred in finding a mutual mistake, the trial court could have granted rescission based upon a unilateral mistake in this case.

{¶ 13} Since the trial court did not abuse its discretion in finding a mutual mistake, the second assignment of error is overruled. The finding of a mutual mistake means that the parties have not reached an agreement and no enforceable contract exists. The first assignment of error is also overruled.

{¶ 14} Finally, Rylee claims that the trial court erred in not granting specific performance. In order for specific performance to be granted, a contract must be free from mistake. *Roth v. Habansky*, 8th Dist. No. 82027, 2003-Ohio-5378, ¶ 16. The decision whether to grant specific performance is within the sound discretion of the trial court. Id. Specific performance will not be enforced when it will cause unreasonable loss to the parties. Id. at ¶ 19. Additionally, it does not matter whether the circumstances causing inequity arise prior to or after the contract is formed. Id.

{¶ 15} In this case, the trial court did not need to determine whether to grant specific performance because it found that there was no enforceable contract due to mutual mistake. This court has affirmed that judgment. Additionally, the granting of specific performance would allow Rylee to obtain something that it did not expect to receive, i.e., a portion of the dining room of the Old Town Inn, and cause Izzard to lose something they did not intend to sell without receiving any additional compensation. The parties determined the fair price based upon the real estate they both believed to be the subject of the sale, the Main Street building, not the additional building. Thus, it would be inequitable to grant specific performance in this case. The third assignment of error is overruled.

{¶ 16} The judgment of the Court of Common Pleas is affirmed.

Judgment affirmed.

SHAW, P.J., and ROGERS, J., concur in judgment only.