[Cite as *Reitter Stucco, Inc. v. Ducharme*, 2015-Ohio-4193.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Reitter Stucco, Inc., | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-404 |
| v. | : | (C.P.C. No. 12CV-3557) |
| John A. Ducharme, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 8, 2015

*McDonald Hopkins LLC*, and *Jason R. Harley*, for appellee.

*John A. Ducharme*, pro se.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, John A. Ducharme, appeals from a final judgment of the Franklin County Court of Common Pleas that adopted a decision of a magistrate finding liability on a breach of contract for $771,444.16 plus pre- and post-judgment interest, attorney fees of $10,172.10, costs of $1,590.46, and other unspecified court costs. For the following reasons, we affirm.

I. PROCEDURAL HISTORY

{¶ 2} Ducharme embezzled a substantial sum of money from plaintiff-appellee, Reitter Stucco, Inc. ("Reitter"), when he was an employee during the 1990's. As a result of that, litigation occurred in the Franklin County Court of Common Pleas in case No. 98CV-1889. Eventually, the parties reached a settlement that enabled Ducharme to avoid responsibility for the full sum of money that he embezzled and entailed an agreement by Reitter not to seek criminal charges against Ducharme or any members of his family. In

addition to this agreement, the parties signed and placed in escrow a consent decree against Ducharme for $1,147,852 with interest from the date of the decree, to be used if Ducharme failed to fulfill his obligations under the settlement. Several years after the settlement agreement (which was titled "repayment agreement") was signed, Ducharme decided that he should be able to count as fulfilling his obligation to repay under the terms of the settlement, the surrender of his profit sharing account with Reitter and certain life insurance assets. As a result, Ducharme considered his obligation to repay fulfilled and refused to make further payments under the repayment agreement.

{¶ 3} In response, on July 2, 2009, Reitter filed a motion in the original case to enter judgment on the consent decree that had been signed in tandem with the repayment agreement. Two different appeals arose from that case. In the first we dismissed for want of an appealable order. *Reitter Stucco, Inc. v. Ducharme*, 193 Ohio App.3d 766, 2011-Ohio-2051, ¶ 13-14 (10th Dist.). In the second we reversed because the trial court had failed to retain jurisdiction to enforce the repayment agreement, and, thus, the matter should have been addressed as a new case. *Reitter Stucco, Inc. v. Ducharme*, 10th Dist. No. 11AP-488, 2011-Ohio-6831.

{¶ 4} Following our decision in the second Reitter appeal, Reitter filed a new action on March 20, 2012 to enforce the original trial court's consent decree based on Ducharme's breach of the repayment agreement. Ducharme answered in narrative form on April 23, 2012. One week later, on April 30, Ducharme filed a counterclaim for $887,089.24, the amount he allegedly had repaid under the repayment agreement which he now claimed was defective or breached by Reitter for a number of reasons, including that he signed under duress.

{¶ 5} On June 11, 2012, Reitter moved to dismiss Ducharme's counterclaims and for judgment on the pleadings. In the course of discovery, on September 9, 2012, Ducharme filed a motion to compel production of documents that he alleged would cast doubt on the amount still due under the repayment agreement. On August 20, 2014, the trial court granted Reitter's motion to dismiss Ducharme's counterclaims, denied judgment on the pleadings, and referred the matter to a magistrate for a bench trial. The following day, the trial court denied Ducharme's motion to compel for failure to comply with Civ.R. 37(E) and Loc.R. 47.01 of the Franklin County Court of Common Pleas. On October 23, 2014, following a trial, the magistrate issued a decision for Reitter. Over the

objections of Ducharme, on April 8, 2015, the trial court adopted the magistrate's decision.

{¶ 6}    On April 12, 2015, Ducharme appealed.

## II.  UNDERLYING FACTS

{¶ 7}    Ducharme failed to secure a transcript of proceedings of the trial court for the purposes of appeal.  Accordingly, we address only the assignments of error that "are based solely on questions of law."  *Corbin v. Dailey*, 10th Dist. No. 08AP-802, 2009-Ohio-881, ¶ 5-6.  Since Ducharme did not provide the trial court or us with a transcript of proceedings before the magistrate, we have no basis for reviewing the facts adduced by testimony in the trial of this case.  Accordingly, Ducharme cannot now dispute the facts found by the trial court and is bound by the factual findings of the magistrate and as adopted by the trial court.  Civ.R. 53(D)(3)(b)(iii); *Ramsey v. Ramsey*, 10th Dist. No. 13AP-840, 2014-Ohio-1921, ¶ 18.  The magistrate's findings of facts appear as follows:

> On May 18, 1998 the parties entered into a Repayment Agreement. (Plaintiff's Exhibit 1)
>
> Exhibit 1 indicated that the Defendant admitted that from as early as 1990 to as late as August of 1997 the Defendant had converted the Plaintiff's property to his own use. (Exhibit 1, page 1, paragraph 3)
>
> The Defendant admitted in the Repayment Agreement that the total amount he converted was $654,315.00. (Exhibit 1, page 2, paragraph 5)
>
> The Defendant admitted that the Plaintiff incurred $100,000.00 in costs and $283,537.00 in lost interest on the funds converted by the Defendant. (Exhibit 1, page 2, paragraphs 7 & 8)
>
> Exhibit 1 has the following clause:
>
> D. Profit Sharing Forfeiture. John A. Ducharme and Anne Ducharme hereby forfeit any and all rights either may have in the Reitter profit sharing program or any successor profit sharing arrangement, and agree to execute such documents as may reasonably be required in order to cause the payment to Reitter of any funds standing to the account of either of them therein.

The Repayment Agreement also contained a paragraph F tiled [sic] Life Insurance. Please note the following relevant language from that clause of the Repayment Agreement:

F. Life Insurance. John A. Ducharme will transfer ownership of any and all life insurance policies to Reitter Stucco, Inc., . . . Reitter Stucco, Inc. shall become the owner of all rights benefits, and obligations under such policies. (Exhibit 1, page 6, paragraphs F)

The Repayment Agreement indicated that the Defendant was to transfer $100,000.00 to the Plaintiff from the sale of his real property. The evidence established that, with a loan from his parents, the Defendant fully complied with that obligation. There is no argument between the parties on this point.

The language of the Repayment Agreement also required that the Defendant sell personal property. (Exhibit 1, page 3, paragraphs A) A list of personal property that was subject to this obligation was attached to the Repayment Agreement and marked as exhibit A.

The list of personal property in exhibit A, that was attached to the Repayment Agreement did not include the Defendant's life insurance or his 401(K) account.

The language contained in the Personal Property clause indicated an additional $100,000.00 obligation owed by the Defendant to the Plaintiff. The clause established what to do if the proceeds of the sale of the items found in exhibit A did or did not exceed a net profit of $100,000.00.

All parties testified that the sale of the items identified in exhibit A did not net $100,000.00. As such the following language from the Repayment Agreement became relevant:

In the event that the proceeds of the sale of the personal property are less than $100,000.00, the variance shall be multiplied by 1.1 and will be added to the principal balance of the note and the term extended beyond 60 months to maintain the same $2,124.70 monthly payments. (Exhibit 1, page 4, paragraphs A)

Hence, the short fall [sic] in the moneys raised by the sale of personal property was added to the installment agreement and the monthly installments were to be extended.

The Repayment Agreement contained a Periodic Payments clause. It reads as follows:

E. <u>Periodic Payments</u>. John A. Ducharme will make monthly payments toward the satisfaction of Reitter's out-of-pocket expenses as follows:

$100,000.00, with interest at the rate of ten percent (10%) per annum, payable $2,124.70 per month commencing June 1, 1998 and continuing for 60 months.

All payments to be made pursuant to this Agreement shall be made by ordinary United States mail, postage prepaid, or some other similar or more reliable method, addressed to Reitter's regular place of Business. Payment shall be mailed on or before the first day of the month.

In the event John A. Ducharme is more that 15 calendar days late in making any payment due to Reitter under the terms of this Agreement, Reitter may, in addition to any other right it may have hereunder, at its option, accelerate the debt, making the unpaid balance of the debt immediately due and owing. (Exhibit 1, page 5, paragraphs E)

The Repayment Agreement did not contain any obligation to provide a periodic accounting.

In December of 1999, the Plaintiff did submit an accounting to the Defendant's then attorney. (See Plaintiff's Exhibit 4) The Defendant testified that he did receive the accounting during that time period.

Exhibit 4 established that the Plaintiff had added $60,436.86 to the balance of the note. That was the shortfall from the sale of the personal property. Therefore, the Plaintiff was extending the monthly payments until such time as the total was paid.

Exhibit 4 also contained a document that was titled Payments Received from John Ducharme Personal Property only. That document showed how the Plaintiff was calculating the shortfall from the personal property. Again the evidence established that the Defendant had the Plaintiff's calculation in 1999 or early 2000.

Defendant admitted that he did not respond to that email nor did he contest the Plaintiff's numbers at that time.

The Defendant testified that he did finally contest Plaintiff's calculation in 2003. The Defendant testified that the triggering event was an inquiry from the IRS to the Defendant. The Defendant testified that the IRS inquiry related to his prior under reported income during the years he was converting the Plaintiff's money. Hence, the Defendant testified that the first time he informed the Plaintiff of his interpretation of the balance owed was in **2003**.

Plaintiff's Exhibits 5 - 7 showed that the Plaintiff never changed its position; i.e., the Defendant was not entitled to any type of credit to the outstanding obligation from the proceeds of the Defendant's forfeited 401(K) plan.

The evidence showed that the Defendant did not make some of his monthly payments during the later years of the agreement. The Defendant made only 8 monthly payments in 2004; 7 monthly payments in 2005; and only 6 monthly payments in 2006, 07 and 08. (See Exhibit 9)

The Defendant then submitted a payment in the amount of $1,139.90 in April of 2009. On the reverse side of the check, in the area for endorsements, the Defendant unilaterally added the words: Final Payment. (See Exhibit E)

The Plaintiff did not cash the check.

The Repayment Agreement contains the following clause:

I. Consent Judgment. John A. Ducharme agrees to execute a consent judgment for wrongful conversion in the amount of $1,147,852. Such consent judgment shall be held by Arter & Hadden and may be filed only after the occurrence of one or more of the events set forth in paragraph G, above. John A. Ducharme hereby waives the application of any applicable statute of limitations. . . . . (Exhibit 1, page 8, paragraphs I.)

The evidence established that Arter & Hadden was the law firm that represented the Plaintiff in 1998.

The Repayment Agreement contains the following language from paragraph G:

In the event of the nonpayment of any obligation in accordance with the terms of this Agreement . . . ., John A. Ducharme . . . agree that the consideration for this Agreement shall have failed and that Reitter shall thereupon be entitled to

> pursue any and all of its claims, rights and remedies at law or in equity. (Exhibit 1, page 7, paragraphs G)
>
> The Repayment Agreement also contains the following language:
>
> P. Independent Legal Counsel. The undersigned acknowledge, represent and agree that they have read this Agreement, that they fully understand the terms hereof, and that they have been fully advised by their legal counsel with respect thereto.
>
> Exhibit 11 established the amounts received by the Plaintiff from the Defendant. The Plaintiff has received and or been paid a total of $376,407.84 as of March 2009.

(Emphasis sic.)  (Oct. 23, 2014 Magistrate's Decision, 3-6.)

{¶ 8}  On the specific topic of whether there was a valid contract, the magistrate found, and the trial court agreed, as follows:

> The Plaintiff proceeded at the Bench Trial to establish the existence of a contract; i.e., the Repayment Agreement. The Plaintiff established the terms of that agreement and the fact that the Defendant breached the agreement when the Defendant stopped paying on the debt in April of 2009.
>
> * * *
>
> The Defendant asserted in his pleadings and at the hearing that he signed the Repayment Agreement under duress. He claimed that the Plaintiff had secured his personal property by a prejudgment attachment motion and that he signed the document due to the financial hardship he was in. Of course, this is a claim he advanced for the first time in 2009 some 11 years after entering into the Repayment Agreement.
>
> As noted, the Repayment Agreement had a clause that indicated that the Defendant was signing with advice of counsel. * * * [T]he Defendant at the hearing claimed he was under duress because he had been caught stealing, and the loss of the proceeds of his ill gotten gains had put him into a financial and legal bind.
>
> [T]he Defendant failed to establish any credible legal evidence to establish his duress claim.

(Oct. 23, 2014 Magistrate's Decision, 7, 16.)

{¶ 9} On the topic of attorney fees, the magistrate made the following factual findings:

> The Plaintiff asserted that it should be awarded its attorney fees associated with the presentment of its claim. The Plaintiff offered the testimony of Mr. Welin and Exhibit 12 that had the attached billing statements. The billing statements begin in 2009 following the Defendant's breach. The Plaintiff is asserting a claim for $25,420.25 in fees and $1,590.46 in litigation expense. Mr. Welin testified to the fees, the necessity of those fees and the reasonableness of the fees in this community. Mr. Welin's testimony at trial, and as contained within his affidavit (Exhibit 12) was uncontested by the Defendant.

(Oct. 23, 2014 Magistrate's Decision, 11-12.)

## III. ASSIGNMENTS OF ERROR

{¶ 10} Ducharme advances seven assignments of error for our review:

> I. The trial court erred when it denied the Defendant-Appellant's Motion to Compel the Production of Documents from the Appellee.
>
> II. The trial court erred when it failed to evaluate and determine the intent of the contracting parties after hearing relevant evidence and testimony.
>
> III. The trial court erred in finding that the Repayment Agreement was unambiguous.
>
> IV. The trial court erred in allowing a consent judgment against Appellant when the entire agreed upon amount in the Repayment Agreement was paid in full to Reitter Stucco, which was supported by the manifest weight of evidence and testimony at trial.
>
> V. The trial court erred when it did not thoroughly evaluate the matter of duress upon the Appellant in executing the Repayment Agreement and the Consent Judgment.
>
> VI. The trial court erred in its calculation of the judgment amount and application of payment made by the Appellant.
>
> VII. The trial Court erred in awarding the Appellee attorney fees of $10,172.10 and litigation costs of $1,590.46.

(Emphasis sic.)

## IV. DISCUSSION

### A. First Assignment of Error – Whether the Trial Court Erred in Failing to Grant Ducharme's Motion to Compel

{¶ 11} "A trial court enjoys broad discretion in the regulation of discovery, and an appellate court will not reverse a trial court's decision to sustain or overrule a motion to compel discovery absent an abuse of discretion." *Coryell v. Bank One Trust Co., N.A.*, 10th Dist. No. 07AP-766, 2008-Ohio-2698, ¶ 47, citing *513 East Rich St. Co. v. McGreevy*, 10th Dist. No. 02AP-1207, 2003-Ohio-2487, ¶ 10.

{¶ 12} Civ.R. 37(E) provides:

> Before filing a motion authorized by this rule, the party shall make a reasonable effort to resolve the matter through discussion with the attorney, unrepresented party, or person from whom discovery is sought. *The motion shall be accompanied by a statement reciting the efforts made to resolve the matter in accordance with this section.*

(Emphasis added.)   As the trial court correctly determined, Ducharme's motion did not include a statement reciting efforts made, if any, to resolve the matter before filing the motion.   Hence, the trial court observed the requirements of Civ.R. 37 and acted within its discretion in denying the motion.   Ducharme's first assignment of error is overruled.

### B. Second and Third Assignments of Error – Whether the Trial Court Erred in Interpreting the Repayment Agreement

{¶ 13} Ducharme argues that the trial court erred in determining that the repayment agreement was unambiguous and that it should have considered the intent of the parties in interpreting the repayment agreement as established by extrinsic evidence. Because Ducharme failed to obtain a transcript, we address only the assignments of error that "are based solely on questions of law." *Corbin* at ¶ 6; *Ramsey* at ¶ 18.   Construction of a contract is an issue of law, which permits us to address these two assignments of error. *See, e.g., Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 38, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995) ("contract interpretation, a question of law, is reviewed de novo").

{¶ 14} Ducharme's argument about intent does not account for the parol evidence rule:

> The parol evidence rule is a principle of substantive law providing that " 'a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing.' * * * The rule 'operates to prevent a party from introducing extrinsic evidence of negotiations that occurred before or while the agreement was being reduced to its final written form,' * * * and it 'assumes that the formal writing reflects the parties' minds at a point of maximum resolution and, hence, that duties and restrictions that do not appear in the written document * * * were not intended by the parties to survive.' "

*Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, ¶ 26 (Cupp, J., concurring), quoting *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, ¶ 7, quoting *Black's Law Dictionary* 1149-50 (8th Ed.2004).  In other words, the rule provides that, " ' "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." ' " *Id.* at ¶ 12, quoting *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000), quoting Williston on Contracts (4th Ed.1999), 569-70, Section 33:4.  "The principal purpose of the parol evidence rule is to protect the integrity of written contracts." *Id.* "By prohibiting evidence of parol agreements, the rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments." *Id.*  As the court further explained:

> An "integration" for these purposes is "[t]he full expression of the parties' agreement, so that all earlier agreements are superseded, the effect being that neither party may later contradict or add to the contractual terms." Black's Law Dictionary (9th Ed.2009) 880. If an integration is a "complete integration," then it fully expresses the intent of the parties, and parol evidence is inadmissible. Id. On the other hand, if an integration is a "partial integration," then it does not fully express the parties' intent, and "[p]arol (extrinsic) evidence is admissible to clear up ambiguities with respect to the terms that are not integrated." Id.

*Williams* at ¶ 28 (Cupp, J., concurring).

{¶ 15} Here the repayment agreement was, by its own terms, a fully integrated agreement.  It provided:

R. <u>Entire Understanding</u>. This Agreement contains the entire Release and Agreement between the parties. The terms of the Agreement are contractual and are not mere recitals and may be modified only by a written instrument executed by each and all parties.

(Mar. 20, 2012 Complaint, exhibit A, 11.)   Thus, the repayment agreement is to be interpreted according to its terms, not extrinsic evidence of other possible intentions or agreements as Ducharme's argument attempts.

{¶ 16} The terms of the repayment agreement were clear and unambiguous:

D. <u>Profit Sharing Forfeiture</u>. John A. Ducharme and Anne Ducharme hereby forfeit any and all rights either may have in the Reitter profit sharing program or any successor profit sharing arrangement, and agree to execute such documents as may reasonably be required in order to cause the payment to Reitter of any funds standing to the account of either of them therein.

E. <u>Periodic Payments</u>. John A. Ducharme will make monthly payments toward the satisfaction of Reitter's out-of-pocket expenses as follows:

$100,000.00, with interest at the rate of ten percent (10%) per annum, payable $2,124.70 per month commencing June 1, 1998 and continuing for 60 months.

All payments to be made pursuant to this Agreement shall be made by ordinary United States mail, postage prepaid, or some other similar or more reliable method, addressed to Reitter's regular place of business. Payment shall be mailed on or before the first day of the month.

In the event John A. Ducharme is more than 15 calendar days late in making any payment due to Reitter under the terms of this Agreement, Reitter may, in addition to any other right it may have hereunder, at its option, accelerate the debt, making the unpaid balance of the debt immediately due and owing.

F. <u>Life Insurance</u>. John A. Ducharme will transfer ownership of any and all life insurance policies to Reitter Stucco, Inc. and will designate Reitter Stucco, Inc. as beneficiary on any life insurance policies for which he has the right of designation, and Reitter Stucco, Inc. shall thereafter be responsible for, but have no obligation to make, all premium payments upon such insurance. Reitter Stucco, Inc. shall become the owner of all

rights, benefits, and obligations under such policies. Reitter Stucco, Inc. shall have the further right to purchase such additional life insurance upon John A. Ducharme as it may, in its sole discretion, deem appropriate. John A. Ducharme hereby irrevocably grants to Reitter Stucco, Inc. the right to purchase, own, control and maintain such policies of insurance and the designation of beneficiaries thereunder and agrees to execute such documents and undertake such actions, including physical examination, as may be necessary to obtain or maintain such insurance. Anne Ducharme will cooperate to complete any documents necessary to fulfill the intent of this paragraph.

(Mar. 20, 2012 Complaint, exhibit A, 5-7.) None of these terms, and no other facts, indicate that the surrender of Ducharme's rights to his life insurance and profit sharing accounts are in any way to be credited against the periodic payments to be made pursuant to part E of the repayment agreement.

{¶ 17} Ducharme argues that there is no other obligation set forth in the contract to which the surrender of profit sharing and life insurance can be credited. However, Ducharme's argument ignores the fact that the Repayment Agreement concerns damages suffered by Reitter as a result of what he "does not dispute * * * that he wrongfully converted * * * $654,315" and that "John A. Ducharme agrees to pay Reitter as set forth herein[.]" (Mar. 20, 2012 Complaint, exhibit A, 2.) Only after that recitation were specific payments addressed in the repayment agreement, including, the "periodic payments" quoted above, liquidation of specific personal and real property, and also the surrender of his life insurance and profit sharing account. The surrender of his insurance and profit sharing account were reparations in part, *in addition* to the other payment obligations for damages suffered by Reitter by Ducharme's embezzlement. There is no basis for this court to find that the surrender of the insurance and profit sharing account were to be understood as anything other than two of several negotiated means for Ducharme to compensate Reitter for damages caused by Ducharme's potentially criminal conduct.

{¶ 18} Ducharme's second and third assignments of error are overruled.

C. **Assignments of Error Four, Five, Six, and Seven – Whether the Trial Court Erred in Making Factual Findings Regarding the Extent of Payments Made by Ducharme, Ducharme's Claimed Duress, and the Entitlement to Attorney Fees**

{¶ 19} Ducharme argues that his theory that the agreement was paid in full was supported by the "manifest weight of evidence and testimony at trial." (Ducharme's Brief, 27.) He also argues that the magistrate failed to thoroughly evaluate the factual circumstances indicating duress and that, instead, the magistrate wrongfully likened him to a thief who complains that the repossession of his ill-gotten gains put him under duress or one who has murdered his parents but seeks mercy from the court because he is an orphan. Finally, Ducharme suggests the trial court erred in its calculation of the payments made by Ducharme as an offset against the consent judgment and Reitter's potential legal fees in recovering its damages from Ducharme's conduct.

{¶ 20} We find these matters to be factual questions that were resolved by the magistrate and the trial court. Because Ducharme has not provided us with a transcript we are unable to review these assignments of error. *Ramsey* at ¶ 18; *Corbin* at ¶ 5-6.

{¶ 21} Thus, we overrule Ducharme's fourth, fifth, sixth, and seventh assignments of error.

## V. CONCLUSION

{¶ 22} Accordingly, we overrule Ducharme's seven assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____