[Cite as *Jori, L.L.C. v. B2B Internatl., L.L.C.*, 2018-Ohio-1216.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JORI, LLC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-L-123** |
| B2B INTERNATIONAL, LLC, et al., | : | |
| Defendants-Appellees, | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2015 CV 000814.

Judgment: Reversed and remanded.

*Stanley Dub,* 20600 Chagrin Boulevard, Suite 400, Shaker Heights, OH 44122 (For Plaintiff-Appellant).

*Edgar Boles,* Dinn, Hockman & Potter, LLC, 5910 Landerbrook Drive, Suite 200, Cleveland, OH 44124 (For Defendants-Appellees).


COLLEEN MARY O'TOOLE, J.

{¶1} Plaintiff-appellant, Jori, LLC,[1] appeals from the judgments of the Lake County Court of Common Pleas, ruling in favor of defendants-appellees, B2B International, LLC and Elie Chamoun on Jori's claims that appellees failed to comply with R.C. 1334.01 et seq. in entering a "business opportunity plan." For the following reasons, we reverse and remand.

---

1. Pursuant to a May 8, 2017 judgment entry of this court, third party defendant John Faddoul was dismissed as a party appellant to this appeal.

**{¶2}** On May 13, 2015, Jori filed a complaint against appellees. Jori argued that it executed a license agreement with B2B, in order to operate a "Burgers 2 Beer," or B2B, restaurant. Count one alleged that this constituted the sale of a "business opportunity plan" pursuant to R.C. 1334.01 and B2B failed to comply with statutory requirements to provide a written disclosure document and a right to cancel. Count two alleged that Chamoun, the managing partner of B2B, was personally liable.

**{¶3}** On June 19, 2015, Chamoun filed a motion to dismiss arguing that Jori failed to establish the elements necessary to pierce the corporate veil. Jori opposed the motion and it was denied by the trial court.

**{¶4}** Also on June 19, 2015, B2B filed an answer, counterclaim, and third-party complaint raising five causes of action against Jori and Faddoul. Jori and Faddoul filed an answer on July 2, 2015.

**{¶5}** On July 31, 2015, Jori filed a motion for partial summary judgment arguing that there was no issue of fact that B2B violated R.C. 1334.01 when a license agreement was executed, the agreement constituted a business opportunity plan, and B2B failed to comply with the disclosure and notice requirements of R.C. 1334.02 - .06 for such plans. Attached to the motion was the affidavit of Faddoul, Jori's owner. He attested that he began having discussions with Chamoun about operating a restaurant using the trade name of B2B in October 2013. Chamoun described his restaurants operating under the same name as being "very successful" and on November 1, 2013, sent an e-mail with projections, including yearly sales of $1,700,000. Faddoul was very interested in opening a B2B restaurant based on Chamoun's representations. As a result, Faddoul leased a building in Willowick and formed Jori, LLC to own the restaurant. According to Faddoul,

Chamoun ordered the signs and printing of the menus for the restaurant, and dictated the menu's design and prices at which food and beverage would be sold. Chamoun also told Faddoul which vendors to use to supply the food and beverage items. A license agreement was signed on May 17, 2014 which allowed Jori/Faddoul to operate a restaurant using the name, logo, décor, and recipes of B2B in exchange for agreed upon payment.

{¶6} On September 17, 2015, appellees filed a brief in opposition to Jori's motion for partial summary judgment arguing that the court could only look to the terms of the integrated license agreement to determine whether a "business opportunity plan" existed. Attached was the affidavit of Chamoun, who averred that Faddoul, the owner of one or more Subway franchises, asked for a license to use B2B's name, trade dress, and propriety information, but did not want a franchise agreement, an allegation denied by Faddoul in a subsequent affidavit. Chamoun stated that there was no representation or promise of profit and estimated sales figures provided were an opinion and based on if the restaurant was run correctly. Chamoun stated that Faddoul, after completing refurbishments with his own contractor, opened the B2B restaurant in May 2014 but by August 2014 had changed the restaurant to Cleveland Burger Company.

{¶7} On September 21, 2015, Chamoun filed an answer, counterclaim, and third party complaint. Jori and Faddoul filed an answer two days later.

{¶8} On April 4, 2016, the trial court denied Jori's motion for partial summary judgment. The court applied the parol evidence rule and found that it could only consider the four corners of the license to determine whether the parties had a "business opportunity plan" pursuant to R.C. 1334.01(D). The court found that no business

3

opportunity plan existed and that appellees could not be held liable for failure to comply with the obligations in R.C. 1334.02 - .06. On May 6, 2016, the court issued a judgment entry restating that holding and noting that "there is no just cause for delay."

{¶9} Jori and Faddoul appealed to this court. The appeal was dismissed in a September 30, 2016 memorandum opinion, in which this court held that there was a lack of a final order since the denial of a motion for summary judgment is not final. *Jori, LLC v. B2B Internatl., LLC*, 11th Dist. Lake No. 2016-L-046, 2016-Ohio-7162.

{¶10} On November 1, 2016, Jori filed a motion for rehearing of motion for partial summary judgment or requesting the court to enter judgment for appellees on Jori's claims. On November 8, 2016, the trial court issued a judgment entry stating that the prior denial of the motion for summary judgment "resulted in judgment against Plaintiff as to all claims in Plaintiff's Complaint" and that the "judgment was in favor of the Defendant as to all Plaintiff's claims against the Defendant." The court granted the portion of Jori's motion requesting it to enter judgment for appellees on Jori's claims. The court included language that "there is no just cause for delay."

{¶11} On appeal, Jori raises the following two assignments of error:

{¶12} "[1.] The trial court erred in finding that the License Agreement did not meet the statutory definition of a 'business opportunity plan' for purposes of R.C. 1334.01(D).

{¶13} "[2.] The trial court erred when it determined that written financial performance projections given to Faddoul by Defendants in November 2013 could not be used to satisfy definitional requirements of R.C. 1334.01(D) because these projections were given to him individually, and he did not form the entity which operated the restaurant until the following month."

4

{¶14} We review this case under a de novo standard. *See Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6 (summary judgment); *Bull Run Properties, LLC v. Albkos Properties, LLC*, 11th Dist. Lake No. 2011-L-003, 2011-Ohio-5712, ¶22 (matters of law – parole evidence rule – written instrument – interpretation of contracts); *Millstone Condominiums Unit Owners Assn., Inc., v. 270 Main St.*, 11th Dist. Lake No. 2011-L-078, 2012-Ohio-2562, ¶27 (evaluation of statutory claims).

{¶15} In its first assignment of error, Jori argues the trial court erred in finding that the license agreement did not meet the definition of a "business opportunity plan" under R.C. 1334.01(D), and that appellees were not required to provide a written disclosure agreement or a five-day cancellation right under R.C. 1334.02 and .06(B).

{¶16} At issue is R.C. Chapter 1334, Ohio Business Opportunity Purchasers Protection Act. R.C. 1334.01(D) states in part:

{¶17} "(D) 'Business opportunity plan' means an agreement in which a purchaser obtains the right to offer, sell, or distribute goods or services under all of the following conditions:

{¶18} "(1) The goods or services are supplied by the seller, a third person with whom the purchaser is required or advised to do business by the seller, or an affiliated person.

{¶19} "(2) The purchaser is required to make an initial payment greater than five hundred dollars, but less than one hundred thousand dollars, to the seller or an affiliated person to begin or maintain the business opportunity plan.

{¶20} "(3) The seller makes any of the following representations:

{¶21} "* * *

{¶22} "(c) That the purchaser can earn a profit in excess of the initial payment;

{¶23} "(d) That there is a market for the goods or services[.]"

{¶24} R.C. 1334.02 provides: "In connection with the sale or lease of a business opportunity plan, no seller or broker shall fail to provide to a prospective purchaser, at least ten business days prior to the execution of an agreement selling or leasing a business opportunity plan, a written disclosure document."

{¶25} R.C. 1334.06(B) indicates that every agreement selling or leasing a business opportunity plan shall be in writing and the seller is required to provide the buyer with a five-day cancellation right.

{¶26} Appellees posit that the parol evidence rule required that all elements of the definitions of the business opportunity plan be established within the text of the license agreement. "The parol-evidence rule is a principle of common law providing that 'a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing.'" *Bellman v. Am. Internatl. Group,* 113 Ohio St.3d 323, 2007-Ohio-2071, ¶7, quoting Black's Law Dictionary 1149 (8th Ed.2004).

{¶27} In adopting appellees' position regarding the parol evidence rule, the trial court essentially established a blanket rule that all the elements must be satisfied within the document in every case. Applying such logic, however, would permit a franchisor to easily avoid the Ohio Act's disclosure requirements by leaving essential elements of a transaction out of the underlying document and instead incorporating these elements in the transaction outside the document. The language used by the Ohio Act to define a business opportunity plan does not support the conclusion that the definitional elements

6

must be found within the document itself. *See* R.C. 1334.01(D). In fact, Ohio courts have considered evidence outside of the four corners of agreements to determine whether transactions satisfy the definition of a business opportunity plan. *See Dreizler v. Destefano*, 1st Dist. Hamilton No. C-860540, 1987 WL 14159 (July 15, 1987); *Margroff v. Cornwell Quality Tools, Inc.*, 81 Ohio App.3d 174 (9th Dist.1991).

**{¶28}** The determination of whether the email in question is a representation pursuant to R.C. 1334.01(D)(3)(c) is an issue of fact that must be resolved by the trial court. A purchaser must be permitted to prove whether the representations listed in R.C. 1334.01(D)(3)(a)-(e) were made. Otherwise, a franchisor would be able to avoid the obligations imposed by the statute by making verbal assurances or representations and then simply including an integration clause in the contract.

**{¶29}** Whether the email in this case satisfies R.C. 1334.01(D)(3)(c) is an unresolved fact. In support of its motion for partial summary judgment appellant attached an affidavit incorporating an email, arguing the email showed appellee made representations that appellant would earn a profit in excess of his initial investment. Attached to appellee's response in opposition was the affidavit of Elie Chamoun, attesting he was the author of the email and stating it did not make representations or assurances. Because a genuine issue of fact exists, the trial court must conduct further proceedings to determine whether appellee made representations that would satisfy (D)(3)(c). *See Portage Cty. Commrs. v. O'Neil*, 11th Dist. Portage No. 2013-P-0066, 2015-Ohio-808, ¶26, 35 (holding a genuine issue of fact remained to be litigated and remanding to the trial court for further proceedings).

**{¶30}** Jori's first assignment of error is with merit.

{¶31} In its second assignment of error, Jori alleges the trial court erred in finding that financial projections given to Faddoul in November 2013 could not be used to satisfy the requirements of R.C. 1334.01(D) since they were given to him individually before Jori was formed.

{¶32} R.C. 1334.01 "clearly recognizes that the sale of a business opportunity plan comes under the ambit of the statute so long as the seller of the plan makes *any* of a number of specific representations." (Emphasis sic.) *Ohio Learning Centers, LLC v. Sylvan Learning, Inc.*, U.S.D.C. Md. No. RDB-10-1932, 2012 WL 3025106, *13 (2012).

{¶33} Any representations made to an individual are admissible by an entity if the individual forms that entity for the purpose of taking title to the operation. Forming the entity shortly before entering the agreement is a common practice.

{¶34} Jori's second assignment of error is with merit.

{¶35} For the foregoing reasons, Jori's assignments of error are well-taken. The judgment of the Lake County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion.

TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶36} I dissent from the majority's analysis and determination that there is a genuine issue of material fact as to whether the parties entered into a business opportunity plan. Since the trial court correctly applied the well-established principles of

8

the parol evidence rule and the parties' integration clause in reaching its decision that no such plan existed, reversal is both unwarranted and contrary to law.

{¶37} Although the majority's opinion provides limited analysis on this issue, the resolution of this case turns upon whether the parol evidence rule applies to business opportunity plans. A thorough analysis of the language of the business opportunity statute, pertinent case law, general rules of parol evidence, and the facts of this case, demonstrates that it was necessary for the parties to include any elements of a potential business opportunity plan within their License Agreement to create a valid plan.

{¶38} In the present matter, the parties' License Agreement clearly describes its terms, noting that the licensee has the right to use the name, recipes, and concept of B2B, as well as use a location approved by the licensor, and that Jori was required to make an initial $20,000 payment. The License Agreement states that it "contains the entire agreement and understanding between the parties and supersedes any prior or contemporaneous written or oral agreements, representations and warranties between them respecting the subject matter of this Agreement." The contract is not ambiguous and, on its face, demonstrates that it encompasses all agreements reached by the parties. Thus, in interpreting the Agreement, it would be improper to look outside the four corners of the document. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11 ("[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties"). The majority has decided to disregard the integration clause, ignoring the written terms of the Agreement.

{¶39} A cornerstone of contract law, the parol evidence rule prohibits this very conduct. The parol evidence rule provides that "the parties' final written integration of

9

their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." (Citation omitted.) *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000). "The principal purpose of the parol evidence rule is to protect the integrity of written contracts," and "the rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments." *Id.* The majority's decision does the exact opposite, allowing the parties to freely present evidence of outside conversations and representations. It permits consideration of an e-mail sent several months before the License Agreement was entered into by the parties.

{¶40} The problems with such an approach are readily apparent. Negotiations that took place while the parties were determining which type of agreement or business plan they intended to enter are not conclusive as to their final contract. For example, if B2B had initially suggested a vendor for the food items but the parties did not ultimately settle upon the use of that vendor, it cannot be said that the parties reached an agreement that Jori would sell goods/services "under the condition" that the goods will be supplied by "a third person with whom the purchaser is required or advised to do business by the seller." R.C. 1334.01(D)(1). Pursuant to the explicit terms of the contract, no such agreement was reached. However, under the majority's approach, essentially any written agreement, although it contains no reference to the elements of a business opportunity plan, can be turned into such a plan based merely on non-final negotiations and discussions. R.C. 1334.01(D) provides that a business opportunity plan is "*an agreement in which* a purchaser obtains the right to offer, sell, or distribute goods or services under"

10

certain conditions. (Emphasis added.) It is necessary, then, to show what the parties *actually* and *finally* agreed upon to prove that such a plan existed.

**{¶41}** The argument that the parol evidence rule does not apply in cases involving business opportunity plans is unsupported by law. Importantly, the Ohio Supreme Court has addressed a similar issue in a statutory claim relating to the Consumer Sales Practices Act, a fact which the majority fails to acknowledge. The Supreme Court held that a consumer "may not present extrinsic evidence contradicting the parties' final written contract to prove a violation of that act," emphasizing that the parol evidence rule "is substantive in nature," "not limited in application to contract claims," and "applies to statutory causes of action." *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 16 and 20 ("the parol evidence rule has application to claims beyond those sounding in contract"); *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 440, 662 N.E.2d 1074 (1996) (the parol evidence rule applied in a claim alleging the tort of negligent misrepresentation). The same analysis is properly applied to the statutory cause of action in the present case. As the Supreme Court noted in *Williams*, it cannot presume that the legislature intended to limit the application of the parol evidence rule in statutory claims when no such language is included in the statute. *Williams* at ¶ 17.

**{¶42}** The majority's citation to *Dreizler* and *Margroff, supra*, in support of the proposition that "Ohio courts have considered evidence outside of the four corners of agreements to determine whether transactions satisfy the definition of a business opportunity plan," is unavailing. These cases are inapplicable, as they do not actually rule on or speak to the issue that is determinative here: whether parol evidence is

11

admissible to clarify the existence of a business plan.  That issue was not raised by the parties in those cases, nor is it clear whether there were reasons that the parol evidence rule may apply based on the facts of those cases (such as the lack of an integration clause or ambiguity).

{¶43}  Finally, the contention that the application of the parol evidence rule would permit franchisors to avoid disclosure requirements by excluding essential elements from a written agreement is unpersuasive.  Parties need only comply with the well-established law to properly create a business plan or franchise.  Both parties have equal opportunity to ensure that this is the case and there is no justification provided to support the conclusion that this interpretation would somehow allow franchisors to avoid their legal obligations.

{¶44}  For these reasons, the trial court's judgment should be affirmed, as the parties' final agreement was not a business opportunity plan and, thus, it was unnecessary to comply with statutory requirements related to such plans.